

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

**DAVID ESCOBAR JR.**, individually and as parent of **A.E.**, a minor,

1628 Severn Run Ct.

Severn MD, 21144

*Plaintiff,*

v.

**TABATHA CAMACHO**, in her official capacity as Principal of Chesapeake Science Point Elementary School, and in her individual capacity,

**SARAH SCHLEGEL**, in her official capacity as CSPES Administrator, and in her individual capacity,

**DR. MARK BEDELL**, in his official capacity as Superintendent of Anne Arundel County Public Schools,

**ROBERT SILKWORTH**, in his official capacity as President of the Board of Education of Anne Arundel County,

**BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY**, in its official capacity,

2644 Riva Road

Annapolis, MD 21401,

**CHESAPEAKE LIGHTHOUSE FOUNDATION ("CLF"),** in its official capacity,

6151 Chevy Chase Dr.

Laurel, MD 20707

**CHESAPEAKE LIGHTHOUSE FOUNDATION (CLF) BOARD OF DIRECTORS,** in its official capacity,

6151 Chevy Chase Dr.

Laurel, MD 20707

*Defendants.*

**Case No. _____**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**(Violations of Fourth and Fourteenth Amendment Rights; Unconstitutional Conditions)**

**INTRODUCTION**

This case challenges a new school policy that forces likely hundreds of families to make an unconstitutional choice: surrender their privacy and property rights, or risk exclusion from essential education. On June 3, 2025, Chesapeake Science Point Elementary School ("CSPES") announced that it would no longer issue school-owned devices. Instead, families must supply personal laptops and submit them for mandatory "configuration" that installs surveillance software and deletes all local files.

This policy marks a dramatic shift. For years, CSPES provided Chromebooks through federal funding. Now, citing budget cuts, the school shifts costs to families—financially and constitutionally. The configuration process deletes all personal content and installs GoGuardian software, granting school officials real-time access to student screens, browsing history, documents, and online activity, at home and at school.

This is not optional. Families who refuse configuration are effectively denied access to education: students cannot log into learning platforms, complete assignments, or take digital assessments. A limited supply of rental devices—available for $100 per year—adds further economic pressure.

The policy transforms every child's personal device into a government-controlled surveillance tool. It extends state power into the home, weaponizing access to education to compel the surrender of digital autonomy. This surveillance far exceeds any legitimate pedagogical purpose and violates fundamental rights under the U.S. Constitution and Maryland Declaration of Rights.

The government may not do indirectly what it cannot do directly. Public schools cannot force families into waiving constitutional protections as a condition for receiving education. The state's

authority over classroom instruction does not extend to the forced configuration, search, and control of private property.

Plaintiff seeks immediate declaratory and injunctive relief to end this unconstitutional practice and ensure that no family must choose between their children's education and their civil liberties.

## PARTIES

1. Plaintiff DAVID ESCOBAR JR is a resident of Anne Arundel County, Maryland, and the parent of A.E., a minor student enrolled at Chesapeake Science Point Elementary School. He brings this action individually and on behalf of his minor daughter.

2. Defendant TABATHA CAMACHO is the Principal of Chesapeake Science Point Elementary School. She is sued in her official capacity and, for damages only, in her individual capacity.

3. Defendant SARAH SCHLEGEL is identified in school communications as part of the CSPES Administration Team. She is sued in her official capacity and, for damages only, in her individual capacity.

4. Defendant DR. MARK BEDELL is the Superintendent of Anne Arundel County Public Schools. He is sued in his official capacity.

5. Defendant ROBERT SILKWORTH is the President of the Board of Education of Anne Arundel County. He is sued in his official capacity.

6. Defendant BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY is the governing body of the Anne Arundel County Public Schools system.

7. Defendant CHESAPEAKE LIGHTHOUSE FOUNDATION ("CLF") is a Maryland non-profit corporation and public charter school operator. CLF is responsible for the management and operation of Chesapeake Science Point Elementary School ("CSPES") under a charter authorized by the Anne Arundel County Public Schools ("AACPS") Board of Education. CLF implements and enforces the policies adopted by its governing board, including the Bring Your Own Device ("BYOD") policy challenged in this action.

3

8. Defendant CHESAPEAKE LIGHTHOUSE FOUNDATION BOARD OF DIRECTORS is the governing body of CLF and the final policymaking authority for CSPES. The Board formally adopted the BYOD policy on February 15, 2024, and is sued in its official capacity for purposes of declaratory and injunctive relief.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. § 1983 (deprivation of constitutional rights under color of state law).

10. This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and injunctive relief under Fed. R. Civ. P. 65.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all defendants reside in this judicial district and all events giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

### Background and Standing

12. On February 15, 2024, the Chesapeake Lighthouse Foundation Board of Directors, acting as the final policymaking authority for CSPES, voted to approve a new Bring Your Own Device ("BYOD") policy. The official meeting minutes reflect that the stated purpose of the policy was to "make the principal's job easier" by shifting responsibility for providing student devices from the school to parents. The Board did not cite an immediate budgetary crisis, the expiration of federal ESSER funding, or the Blueprint for Maryland's Future funding formula changes as reasons for the policy. See Exhibit A (Feb. 15, 2024 CLF Board Meeting Minutes, pp. 7).

13. Nearly one year later, in February 2025, CLF and CSPES publicly justified the BYOD policy on the grounds of an alleged budget shortfall, citing the expiration of ESSER Chromebook funding and a 12% loss in state funding under the Blueprint for Maryland's Future law. See Exhibit B (CSPES BYOD Program Email Justification Statement and Policy, Feb. 2025, p. 1). This stated

rationale materially differs from the rationale documented in the February 2024 board meeting minutes.

14. Following the Board's approval, Chesapeake Lighthouse Foundation directed CSPES to implement the BYOD policy beginning in the 2025–2026 school year. According to CLF's publicly available leadership information, Sedat "Ak" Aktan serves as Chief Executive Officer and oversees operational and administrative policy across all CLF-operated schools, including CSPES. Yusuf Derin serves as Director of Operations for CLF and is responsible for managing technology operations across CLF schools.

15. Principal Tabatha Camacho and CSPES administrative staff, including Sarah Schlegel, were responsible for enforcing the BYOD policy at CSPES. Under their direction, students were required to surrender personal devices for configuration with CLF-mandated software that allows ongoing monitoring, access, and control by school officials.

16. A.E. is a minor child enrolled at Chesapeake Science Point Elementary School (CSPES) for the 2025–2026 school year. Like all 500+ students at CSPES, A.E. is required to use a digital device to access curricular materials, classroom platforms, and communication tools essential to her elementary education.

17. A.E. has a constitutionally protected right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Article 26 of the Maryland Declaration of Rights. The forced installation of surveillance and control tools on her personal educational device — without individualized suspicion, judicial authorization, or any meaningful consent — constitutes an unconstitutional search and seizure of both her person and effects. These intrusions are not limited to school hours or school-related activities, but extend into the home and encompass A.E.'s private communications, personal files, and digital behavior.

18. To comply with the school's Bring Your Own Device (BYOD) policy, A.E. will use a personal laptop owned and maintained by her parent, Mr. David Escobar Jr. This device is not school-issued property; it is private property acquired, configured, and used by Mr. Escobar for both

5

household and personal purposes. In order for A.E. to access her public education, CSPES has required that this privately owned computer be configured with persistent device management tools and student surveillance software that grant the school ongoing access, control, and data monitoring capabilities.

19. Mr. Escobar has standing in this action in two distinct capacities:

    a. As a parent, Mr. Escobar asserts his constitutional right to direct the upbringing and education of his child without coercive conditions that infringe on her privacy, liberty, or access to education. The school's policy forces him to choose between protecting his daughter's digital privacy and allowing her to attend public school — an unconstitutional condition.

    b. As an individual, Mr. Escobar asserts that CSPES and its agents have directly infringed on his own Fourth Amendment and property rights by requiring the installation of invasive monitoring software on his personally owned device, effectively transforming it into an instrument of state surveillance. This constitutes a warrantless search and seizure of his property for government purposes, without judicial oversight, probable cause, or individualized suspicion.

20. Mr. Escobar brings this complaint on behalf of himself and as next friend to A.E., a minor, whose constitutional rights are independently implicated and infringed by CSPES's BYOD policy.

**The School's Authority Structure and Governance Ambiguity**

21. CSPES is a public charter school within the Anne Arundel County Public Schools system. Under Md. Code, Educ. §§ 9-102(8)–(9), 9-106(a), and 9-107, public charter schools are subject to all applicable federal and state laws governing public schools, including constitutional requirements, civil rights protections, and health and safety law.

22. AACPS is the charter authorizer for CSPES. It retains oversight authority to ensure CSPES operates in compliance with state law, AACPS policies, and the school's charter agreement. The

AACPS Board of Education is the governing body of AACPS and exercises state-delegated authority over all public schools in Anne Arundel County, including charter schools.

23. The Chesapeake Lighthouse Foundation ("CLF") is a Maryland non-profit corporation and the charter school operator for CSPES. CLF operates CSPES under a charter granted by AACPS and is responsible for the school's daily management, staffing, and operational decisions, subject to AACPS oversight.

24. The CLF Board of Directors is the final policymaking authority within CLF for its operated schools, including CSPES. This body is referred to in certain school communications as the "Governance Board." Initially, these references created ambiguity as to whether the term referred to the AACPS Board of Education or another body. Upon review of the February 15, 2024 meeting minutes, it is clear that the "Governance Board" is in fact the CLF Board of Directors, which formally adopted the Bring Your Own Device ("BYOD") policy on that date.

25. Because both AACPS and CLF exercise elements of state authority over CSPES, and because AACPS retains oversight responsibility for charter compliance, each entity shares accountability for ensuring that policies affecting CSPES students comply with constitutional requirements.

26. Any technology requirements imposed by any Defendant must be narrowly tailored to serve legitimate educational purposes and cannot exceed what is necessary for instruction.

**The School's Prior Practice and Sudden Policy Shift**

27. From approximately 2021 through 2024, CSPES provided school-owned Chromebooks to every student at no cost to families. These devices were funded through federal ESSER (Elementary and Secondary School Emergency Relief) grants, pandemic relief funds provided to public schools.

28. During this period, families reasonably relied on the school's provision of necessary technology for their children's education, and many made financial decisions based on this established practice.

29. The school-provided devices included pre-installed educational software and content filtering as required by the Children's Internet Protection Act ("CIPA"), 47 U.S.C. §§ 254(h) and 254(l), demonstrating that CSPES could meet its educational goals and federal compliance obligations without invading personal devices.

**The Abrupt Policy Change and Shift in Justification**

30. On February 15, 2024, the Chesapeake Lighthouse Foundation ("CLF") Board of Directors — referred to in certain school communications as the "Governance Board" — voted to adopt a Bring Your Own Device ("BYOD") policy for the 2025–26 school year. According to the official meeting minutes, the stated purpose of the policy was to "make the principal's job easier" by shifting responsibility for providing student devices from the school to parents. The Board did not cite the expiration of ESSER funds, a budget shortfall, or the Blueprint for Maryland's Future law as reasons for the change. See Exhibit A (Feb. 15, 2024 CLF Board Meeting Minutes, pp. 7).

31. Nearly one year later, in February 2025, CLF and CSPES publicly justified the BYOD policy as necessary due to the expiration of ESSER Chromebook funding in 2024 and a 12% loss in state funding (over $2 million annually) resulting from changes in Maryland's education funding formula under the Blueprint for Maryland's Future law. See Exhibit B. This stated rationale materially differs from the contemporaneous reason recorded in the Board's adoption of the policy.

32. According to records produced by Anne Arundel County Public Schools in response to a Maryland Public Information Act request, AACPS does not maintain any districtwide BYOD policy requiring any of their approximately 80,000 students not in charter schools to provide personal devices for instructional use, nor does it require the installation of monitoring or control software on student-owned devices. The BYOD requirement at CSPES is therefore not an AACPS-wide directive, but rather a decision made specifically by CLF and its Board of Directors. See Exhibit C (AACPS MPIA Response, July 8, 2025).

33. It is presently unclear whether the BYOD policy adopted on February 15, 2024 applies only to CSPES or to all CLF-operated schools. If implemented across CLF's full network of charter schools, the policy could impact more than 4,000 students, rather than only the approximately 500 students enrolled at CSPES.

34. Rather than seek alternative funding sources, reduce other expenditures, implement a truly voluntary program, or follow the practices of other AACPS schools, the responsible Defendants chose to shift both the financial burden and the constitutional intrusions onto CSPES families specifically.

35. While the February 15, 2024 meeting minutes reflect that the stated purpose of the policy was to "make the principal's job easier," later public statements reframed the change as a budgetary necessity caused by the expiration of ESSER funding and the Blueprint for Maryland's Future law. This shift in rationale appears calculated to shift blame away from the Board's discretionary choice in 2024 and onto external funding conditions, despite the fact that those conditions were neither cited nor discussed when the policy was adopted.

**The School's Announcement and Implementation Timeline**

36. On June 3, 2025, at 5:00 PM—near the end of the school year when families had little time to organize opposition—Defendants sent an email to parents announcing the mandatory BYOD policy for the upcoming school year. See Exhibit B.

37. The email, sent by Principal Tabatha Camacho and Sarah Schlegel, presented the policy as a settled requirement and sought to minimize its implications by stating, "we believe most of your questions will be answered in the attachment, but please don't hesitate to reach out if you need further assistance." The attached FAQ document detailed the policy's most invasive requirements, including mandatory device surrender and installation of monitoring software. See Exhibit B.

38. On August 8, 2025—only seventeen days after receiving The Civic Ledger's July 22, 2025 correspondence outlining the policy's constitutional defects—Defendants sent another newsletter

confirming that device configuration appointments had begun. See Exhibit D (Communications from The Civic Ledger, July 22, 2025).

39. By August 10, 2025, nearly 100 configuration appointment slots had already been filled by families. See Exhibit E (Configuration Appointment Schedule, August 10, 2025).

40. By proceeding with active implementation while knowing of these constitutional violations, Defendants demonstrated deliberate indifference to families' fundamental rights.

**The Mandatory Configuration Process**

41. Defendants state that CSPES IT staff will configure devices "free of charge through a brief 10–15 minute appointment that you can schedule starting in August," presenting the process as a convenience while concealing the constitutional violations inherent in the procedure. See Exhibit B.

42. In reality, the mandatory configuration process requires:

    a.  Installation of Google's management platform for "student emails, devices, and apps"

    b.  Deployment of GoGuardian monitoring software for content filtering and surveillance

    c.  Automatic and irreversible deletion of all local files on the device

    d.  Installation of testing applications and school-based apps

    e.  Configuration for automatic connection to school Wi-Fi

    f.  Registration of the device to the school domain with ongoing administrative control

43. The most severe impact—the forced deletion of all local files—is buried in the FAQ document under the statement: "Since your device will be configured and registered to the school domain, the local files will be deleted automatically." See Exhibit B.

44. This amounts to the compelled destruction of personal property without compensation.

45. The policy categorically prohibits all non-Chrome OS devices, stating "your device has to be a Chrome OS system operated device. Windows, Mac, Android and iOS devices are not compatible with the school." (Exhibit B). This arbitrary restriction forces families to purchase specific devices regardless of what technology they already own.

46. As a nominal alternative, families may rent a school-provided device for $100 per school year, but Defendants admit that only "a limited number of devices are available." The rental fee may be waived only upon submission of financial hardship documentation, creating unnecessary bureaucratic barriers to access. See Exhibit B.

47. Defendants also require that students maintain a configured Chromebook "during their entire enrollment here at our school," making clear this is not a temporary or transitional measure but a permanent condition of attendance—and a continuing surrender of rights. See Exhibit B.

**Defendants' Misleading Representations and Admissions**

48. Defendants make several misleading claims about the policy's impact while simultaneously admitting its true nature:

    a. They claim "there won't be any restriction on your device" while mandating installation of Google's management platform and GoGuardian monitoring software, both of which impose continuous administrative control. See Exhibit B.

    b. They state students "can use your personal email, too" while maintaining the ability to monitor all communications. See Exhibit B.

49. They assert that configuration is necessary merely to "authorize your device for our network" when the process, as described in their own materials, installs surveillance and control capabilities far beyond what is required for network access. See Exhibit B.

50. Defendants also admit the policy is driven by cost-cutting objectives, stating: "The BYOD program and other measures will allow the school to save significant expenses and continue offering its current programs with no cuts." See Exhibit B.

51. In attempting to justify the surveillance components, Defendants cite the Children's Internet Protection Act ("CIPA"), claiming a legal obligation to "protect students from harmful online content." See Exhibit B.

52. These claims misstate CIPA's scope and requirements:

11

a. Under 47 C.F.R. § 54.520(c)(1)(i), CIPA requires only a "technology protection measure" that blocks or filters access to inappropriate content—it does not authorize wholesale control over privately owned devices, deletion of personal files, or installation of permanent monitoring software.

b. CIPA applies only to schools receiving E-rate discounts for Internet access or internal connections, and its filtering obligations extend solely to devices "owned by the recipient" school.

c. The FCC's implementing regulations at § 54.520(c)(1)(iii) expressly allow schools to certify that "the particular computer for which Internet access or internal connections are being sought will not be used in conjunction with a computer owned by the recipient(s)," confirming that CIPA does not apply to family-owned devices

d. When certifying CIPA compliance under § 54.520(c)(2)(i), schools must certify only that they "are enforcing a policy of Internet safety that includes measures to block or filter Internet access for any computers that are owned by the recipient"—family-owned devices are explicitly excluded.

e. CIPA permits authorized personnel to disable filters "for bona fide research or other lawful purpose" (§ 54.520(c)(1)(i)), undermining the claim that continuous, non-removable surveillance is legally mandated.

f. Most critically, § 54.520(c)(4) provides that filtering determinations "shall be made by the school board" and that "No agency or instrumentality of the United States Government may establish criteria"—meaning CIPA creates no federal requirement for surveillance of privately owned devices.

53. Defendants nonetheless acknowledge that their "managed devices" use "tools like Google and GoGuardian to maintain appropriate filtering and monitoring," confirming that the purpose extends beyond content filtering into full-device surveillance. See Exhibit B.

**Economic Coercion and Lack of Alternatives**

54. The choice presented to families is economically coercive and lacks meaningful alternatives:

    a. Purchase a Chromebook (typically $200-400) and surrender it for configuration

    b. Pay $100 annual rental fee (if devices are available)

    c. Have their child unable to access digital learning resources

55. There is no option to decline participation while maintaining full educational access, as Defendants' own materials state that students must have configured Chromebooks "during their entire enrollment here at our school," making compliance a permanent condition of attendance. See Exhibit B.

56. This policy disproportionately burdens low-income families, forcing them to choose between essential household expenses and their children's access to education. The coercive effect is compounded by the fact that neither AACPS nor other public schools in the district impose a comparable requirement, demonstrating that this policy was a discretionary choice by CLF and its Board rather than an unavoidable mandate. If applied across all CLF-operated schools, this policy could impact more than 4,000 students, magnifying both the financial and constitutional harm.

**Plaintiff's Experience and Ongoing Harm**

57. Mr. Escobar's daughter A.E. is enrolled at Chesapeake Science Point Elementary School for the 2025-2026 school year.

58. Mr. Escobar has been informed that A.E. must have a configured Chromebook to participate fully in educational activities. See Exhibit B.

59. If Mr. Escobar provides a personal device for configuration:

    a. All personal files will be automatically deleted. See Exhibit B.

    b. The device will be subject to continuous monitoring through Google's management tools and GoGuardian software. See Exhibit B.

    c. Private family information, including documents, photographs, and communications unrelated to school activities, may be exposed to school administrators.

    d. The device's functionality and administrative settings will be permanently altered.

e. Any family member who uses the configured device will be subject to school surveillance, effectively converting a shared household computer into a government-controlled tool and eliminating its use for private purposes.

60. If Mr. Escobar declines to provide a device for configuration or pay the $100 annual rental fee, A.E. will be denied equal access to core educational opportunities, including the ability to complete digital assignments, take computer-based assessments, and participate in required elements of the curriculum.

61. Students enrolled in other AACPS-operated schools—including those in the same geographic district—are not subject to the BYOD requirement. These comparator students are provided with school-owned devices at no cost, face no requirement to purchase personal devices, and are not compelled to submit those devices to government configuration, monitoring, or domain control. See Exhibit C.

62. This disparate treatment imposes unique financial and privacy burdens on CSPES families that are not imposed on similarly situated public school students in Anne Arundel County. The difference in treatment is not justified by any legitimate educational necessity, as AACPS's own technology program provides equal or greater access to digital learning without commandeering privately-owned devices.

63. Anne Arundel County Public Schools (AACPS) issues Chromebooks managed by the district's Technology Office for in-school use and operates a Device Loaner Program for home use. Families in those schools are never required to install monitoring software on personal devices, surrender domain control, or permit continuous surveillance within their homes.

64. AACPS's technology practices demonstrate that the objectives claimed by CSPES—student device access, online safety, and compliance with the Children's Internet Protection Act—can be achieved without the severe intrusions and economic burdens imposed by the BYOD policy. The disparity in treatment between CSPES families and other AACPS families constitutes unequal treatment under color of state law.

65. On July 22, 2025, The Civic Ledger—a civic journalism initiative founded by Mr. Escobar—sent emails to both Principal Camacho and AACPS legal counsel attaching a detailed letter outlining constitutional concerns with the BYOD policy. See Exhibit D (Communications from The Civic Ledger, July 22, 2025).

66. Despite receiving this formal notice of potential constitutional violations, Defendants provided no response and proceeded with implementation of the policy unchanged. This is evidenced by the August 8, 2025 parent newsletter confirming configuration appointments and the August 15, 2025 schedule nearly 100 appointments already filled. See Exhibit E.

67. Mr. Escobar and A.E. face ongoing harm from this unconstitutional policy, including unlawful searches and seizures of private property, compelled surveillance of household devices, denial of equal access to public education, and unequal treatment compared to other AACPS students who receive school-owned devices without intrusive monitoring. This harm will continue for the duration of A.E.'s enrollment unless this Court intervenes.

## CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF:**

**FOURTH AMENDMENT TO THE U.S. CONSTITUTION – UNREASONABLE SEARCH AND SEIZURE**

68. Plaintiff realleges and incorporates paragraphs 1-53 as if fully set forth herein.

69. The Fourth Amendment protects individuals against unreasonable searches and seizures by government actors, including public schools and their agents.

Unconstitutional Seizure

70. The mandatory surrender of a personal Chromebook for "configuration" constitutes a seizure under the Fourth Amendment because it deprives the owner of possessory rights and control over their property.

71. The automatic and irreversible deletion of all local files during configuration constitutes a permanent seizure of personal property—digital photographs, documents, communications, and other data—that can never be recovered. See Exhibit B.

72. This seizure occurs without:

   a. A warrant based on probable cause

   b. Any individualized suspicion of wrongdoing

   c. Exigent circumstances

   d. Voluntary consent, as purported "consent" is coerced by the threat of exclusion from essential educational activities.

73. The seizure is unreasonable because it is unlimited in both scope and duration. The school retains continuing dominion over the device through mandatory installation of management software, GoGuardian surveillance tools, and domain registration, ensuring ongoing governmental control for the entirety of the student's enrollment.

**Configuration Search**

74. Following the seizure, school officials conduct warrantless, suspicionless searches of the surrendered devices.

75. When families physically surrender devices for "configuration," government employees gain unrestricted access to the device's entire contents. During this 10–15-minute period, school IT staff can:

   a. View all stored files, photos, and documents

   b. Access browsing history, saved passwords, and cached credentials

   c. Read private communications, including emails and messaging apps

   d. Copy or transfer data before deletion

   e. Access cloud storage linked to the device

   f. Review any application data and settings stored locally

76. This physical access search is particularly egregious because:

16

       a.   Families have no ability to monitor what officials do with the device

       b.   There are no stated limitations on what may be opened, reviewed, or copied

       c.   No inventory, log, or record is provided of what was accessed or retained

77. Officials have complete, unsupervised access to highly personal and private information belonging to multiple family members.

**The Ongoing Surveillance Search**

78. Once the Chromebook is enrolled in the school's Google Workspace for Education domain, CSPES administrators gain continuous administrative control over the device. Through Google Admin Console, they can:

       a.   Enable or disable the device's camera and microphone at any time

       b.   Remotely install, remove, or configure applications with camera/microphone permissions

       c.   Access Google Meet, Classroom, and other applications that can activate the camera or microphone without user initiation

       d.   Modify security settings to permit background operation of audio/video features

       e.   Override or lock user privacy settings.

79. Enrollment also strips the family of the ability to change these controls. Once under domain management, the device:

       a.   Cannot be unenrolled without administrator approval

       b.   Prevents removal of school-installed software

       c.   Blocks user attempts to alter camera/microphone permissions set by the school.

80. Google's own Workspace for Education policies acknowledge that domain administrators may manage "hardware features such as cameras and microphones" and retain logs of their use. These controls remain active anywhere the device goes, including the family home, and at all times of day.

81. As a result, "configuration" grants government agents the ongoing technical capacity to activate or access a student's camera and microphone from within the home, with no practical means for families to verify when or how that access is used or to disable it themselves.

82. The surveillance capabilities of GoGuardian are not speculative—they are expressly promoted by the vendor. According to GoGuardian's own documentation, the platform provides "real-time visibility into student activity," allows educators to "see student screens in real-time," "close tabs remotely," "lock student screens," and receive "AI-powered alerts" for perceived concerning behavior. The software operates with 24/7 monitoring enabled by default unless an administrator actively reconfigures it. See Exhibit F (iKeep Safe Product Profile GoGuardian Oct 2023).

83. Once installed through the mandatory configuration process, GoGuardian forms the third layer of surveillance—stacked on top of Chrome OS domain enrollment and Google Workspace administrator control. According to GoGuardian's own materials (Exhibit F) and publicly available information, the system continuous:

    a. Monitors screens in real-time, allowing teachers to watch everything students do

    b. Captures screenshots automatically when AI detects "concerning" content

    c. Tracks every website visited with detailed timestamps

    d. Logs all "bypass attempts" when students try to access blocked content

    e. Uses artificial intelligence to flag "off-task" behavior

    f. Enables remote device control by school staff, including opening or closing tabs and locking the screen

    g. Records and reports on student activity 24/7 by default, with monitoring outside school hours requiring administrators to actively configure and enable "Out-of-School Mode" or "After Hours" settings to limit surveillance

    h. Creates permanent behavioral records that can be shared with "parents and administrators"

84. These searches and monitoring activities are unreasonable under the Fourth Amendment because they:

    a. Occur without warrant, probable cause, or reasonable suspicion

    b. Give government employees unrestricted and continuing access to a child's activity in the home

    c. Generate detailed behavioral dossiers on children or any family member who uses the device

    d. Lack any oversight, limitations, or accountability measures

    e. Are not limited to educational content but encompass all device data

    f. Continue indefinitely throughout enrollment

    g. Extend into the home where Fourth Amendment protections are strongest

    h. Far exceed any legitimate educational purpose

85. Electronic devices receive heightened Fourth Amendment protection due to their capacity to store vast amounts of personal information, including private communications, photographs, financial data, medical information, and intimate details of family life.

86. Even under *New Jersey* v. *T.L.O.*, 469 U.S. 325 (1985), which permits limited school searches on reasonable suspicion, the Supreme Court emphasized that such searches must be justified at inception and reasonable in scope. The BYOD policy fails both requirements:

    a. Not justified at inception - there is no individualized suspicion of any wrongdoing

    b. Not reasonable in scope - wholesale access to all family data far exceeds any educational purpose

87. In *Safford Unified School District* v. *Redding*, 557 U.S. 364 (2009), the Supreme Court held that even a search with some suspicion can violate the Fourth Amendment if "the content of the suspicion failed to match the degree of intrusion." The same principle applies here: no suspicion justifies an intrusion of this magnitude.

88. In *G.C.* v. *Owensboro Public Schools*, 711 F.3d 623 (6th Cir. 2013), the court rejected a school's search of a student's phone absent reasonable suspicion that the device contained evidence of wrongdoing or danger.

89. The BYOD policy is far more intrusive than the unconstitutional searches in *Redding* and *G.C.*:

    a. It applies without any suspicion

    b. Not limited to school-related content but encompasses all family data

    c. It is not a one-time search but ongoing, indefinite monitoring and surveillance

    d. Not responding to any infraction but preemptively applied to all students

90. In *Riley v. California*, 573 U.S. 373 (2014), the Court recognized that modern electronic devices contain "the privacies of life" and cannot be searched without a warrant, even incident to arrest. If police cannot do this, school officials certainly cannot impose such searches on all students as a condition of attendance.

91. *Ogletree v. Cleveland State University*, 647 F.Supp.3d 602 (N.D. Ohio 2022), further confirms that technology-based intrusions into the home—even for educational purposes—violate the Fourth Amendment absent strong justification

92. The BYOD policy obliterates the line between limited educational oversight and unlimited government intrusion. No parent would voluntarily allow a government employee to enter their home, browse through the family computer, copy its contents, and install monitoring tools. This policy accomplishes that same result by forcing the device into school control.

93. Defendants cite the Children's Internet Protection Act (CIPA) as justification, framing the configuration process as necessary to comply with federal law. In reality, CIPA's requirements, found at 47 C.F.R. § 54.520, apply only to devices "owned by the recipient" school. The FCC's own regulations expressly allow schools to certify that devices not owned by the school will not be subject to these measures.

94. Nothing in CIPA authorizes or requires the forced surrender of privately-owned devices, the deletion of personal files, the installation of surveillance software, or permanent monitoring. By

invoking CIPA, Defendants are using a federal compliance pretext to justify wholesale configuration as a shortcut to overcome technical hurdles of introducing private devices onto AACPS networks, rather than implementing less intrusive, lawful alternatives.

95. Even for school-owned devices, CIPA requires only a "technology protection measure" to block access to harmful content, not continuous behavioral tracking, administrative control over personal hardware, or the ability to activate cameras and microphones in the home.

96. When certifying CIPA compliance, schools must state only that they are "enforcing a policy of Internet safety that includes measures to block or filter Internet access for any computers that are owned by the recipient" (47 C.F.R. § 54.520(c)(2)(i)) (emphasis added). The regulations further provide that a school may certify that "the particular computer for which Internet access or internal connections are being sought will not be used in conjunction with a computer owned by the recipient(s)" (§ 54.520(c)(1)(iii)). These provisions make clear that CIPA's filtering requirement applies exclusively to school-owned devices and that privately-owned devices may be excluded from such measures altogether. CSPES's BYOD policy directly contradicts this regulatory framework by imposing monitoring and administrative control over family-owned devices that CIPA expressly does not reach.

**SECOND CLAIM FOR RELIEF:**

**FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS**

97. Plaintiff realleges and incorporates paragraphs 1–81 as if fully set forth herein.

98. The Fourteenth Amendment protects fundamental rights from arbitrary and unreasonable government interference.

99. The right to a public education, once provided by the state, cannot be arbitrarily denied or conditioned upon the surrender of other constitutional rights.

100. Parents possess a fundamental right to direct the upbringing and education of their children without unwarranted governmental intrusion.

101. Individuals possess a fundamental right to privacy in their personal electronic devices and the data they contain.

102. Defendants' BYOD policy infringes upon these rights by conditioning a student's access to education on:

    a. The compelled surrender of a privately owned device for configuration

    b. The deletion of all locally stored personal files

    c. The installation of persistent monitoring software with 24/7 surveillance capabilities

103. No compelling governmental interest justifies these intrusions, and the policy is not narrowly tailored to achieve legitimate educational purposes.

104. Less restrictive alternatives exist, including school-issued devices, voluntary participation programs, or network-based filtering that does not require domain control over privately owned devices.

**THIRD CLAIM FOR RELIEF:**

**FOURTEENTH AMENDMENT – PROCEDURAL DUE PROCESS**

105. Plaintiff realleges and incorporates paragraphs 1–89 as if fully set forth herein.

106. Personal electronic devices and the data they contain constitute "property" protected by the Due Process Clause.

107. The BYOD policy deprives students and families of this property by automatically and irreversibly deleting all locally stored files during the configuration process. See Exhibit B.

108. Defendants provide no meaningful process to:

    a. Challenge or appeal the configuration requirement

       Protect or recover personal data prior to deletion

    b. Opt out of the program while maintaining equal educational access

    c. Seek review of adverse decisions by a neutral decisionmaker

109. This lack of notice, opportunity to be heard, or neutral review before deprivation violates the Fourteenth Amendment's guarantee of procedural due process.

**FOURTH CLAIM FOR RELIEF:**

**FOURTEENTH AMENDMENT – EQUAL PROTECTION**

110. Plaintiff realleges and incorporates paragraphs 1–94 as if fully set forth herein.

111. The Equal Protection Clause prohibits states from treating similarly situated individuals differently without a rational basis.

112. Students at Chesapeake Science Point Elementary School are similarly situated to other students in Anne Arundel County Public Schools, yet CSPES students alone are required to:

    a. Purchase or provide a privately owned device for school use

    b. Surrender it for government configuration and monitoring

    c. Pay an annual rental fee if they cannot supply such a device

113. Students in all other AACPS schools—including those within the same district—are provided school-owned Chromebooks at no cost, without any requirement to submit personal devices for configuration or monitoring. See Exhibit C.

114. This disparate treatment imposes additional financial burdens and privacy intrusions on CSPES families without any rational basis related to legitimate educational objectives.

115. By imposing this unique and burdensome requirement only on CSPES students, Defendants have denied Plaintiff and his daughter the equal protection of the laws guaranteed by the Fourteenth Amendment.

**UNCONSTITUTIONAL CONDITIONS DOCTRINE**

116. Plaintiff realleges and incorporates paragraphs 1-100 as if fully set forth herein.

117. The government may not condition the receipt of a public benefit on the waiver of constitutional rights where such conditions are coercive or unrelated to the benefit's purpose. Perry v. Sindermann, 408 U.S. 593, 597 (1972) ("[E]ven though a person has no 'right' to a valuable governmental benefit... [the government] may not deny a benefit to a person on a basis that infringes his constitutionally protected interests."); Koontz v. St. Johns River Water Mgmt. Dist.,

570 U.S. 595, 604 (2013) (government cannot force people to give up constitutional rights in exchange for a discretionary benefit).

118. Public education is a government benefit that cannot be conditioned on the surrender of Fourth and Fourteenth Amendment rights. See Plyler v. Doe, 457 U.S. 202, 221 (1982) (recognizing education as a benefit of "paramount importance" in maintaining our basic institutions).

119. The BYOD policy's requirements are:

    a. **Coercive** – families have no meaningful choice but to comply

    b. **Unrelated** – the requirements are not narrowly tailored to any legitimate educational purpose

    c. **Excessively intrusive** – they go far beyond what is necessary for instruction or safety

    d. **Pretextual** – the policy is claims primarily to reduce costs, not to enhance educational quality. See Exhibit B.

120. By forcing families to choose between exercising constitutional rights and ensuring their children's full access to public education, Defendants have imposed an unconstitutional condition.

121. This violates the well-established principle that the government may not accomplish indirectly, through the imposition of conditions, what it is forbidden to do directly. *Perry*, 408 U.S. at 597; *Koontz*, 570 U.S. at 604.

**FIFTH CLAIM FOR RELIEF:**

**42 U.S.C. § 1983 – DEPRIVATION OF CONSTITUTIONAL RIGHTS OFFICIAL CAPACITY (INJUNCTIVE RELIEF)**

122. Plaintiff realleges and incorporates paragraphs 1-100 as if fully set forth herein.

123. Defendants Camacho, Schlegel, Bedell, and Silkworth, acting under color of state law in their official capacities, have deprived and continue to deprive Plaintiff of rights secured by the Constitution. Pursuant to Ex parte Young, 209 U.S. 123 (1908), these officials are proper defendants for prospective injunctive relief to halt ongoing constitutional violations.

124. Defendants Camacho and Schlegel, acting in their individual capacities with deliberate indifference to Plaintiff's constitutional rights, knowingly implemented and enforced policies that violate clearly established constitutional protections. These defendants knew or should have known that:

    a. Forcing families to surrender personal devices violates the Fourth Amendment

    b. Deleting personal files without due process violates the Fourteenth Amendment

    c. Conditioning education on rights waivers violates the unconstitutional conditions doctrine

    d. Their actions exceeded any lawful authority under CIPA or state law

125. These violations are pursuant to official policy, practice, or custom that the individual defendants helped create, implement, and enforce despite actual knowledge of constitutional violations. See Exhibit B.

126. Plaintiff has suffered and continues to suffer injury as a direct and proximate result of Defendants' unconstitutional conduct, including loss of property, invasion of privacy, and denial of educational opportunities.

**SIXTH CLAIM FOR RELIEF:**

**42 U.S.C. § 1983 – DEPRIVATION OF CONSTITUTIONAL RIGHTS INDIVIDUAL CAPACITY (DAMAGES)**

127. Plaintiff realleges and incorporates paragraphs 1-105 as if fully set forth herein.

128. Defendants Camacho, Schlegel, Bedell, and Silkworth, acting under color of state law in their official capacities, have deprived and continue to deprive Plaintiff of rights secured by the United States Constitution. Pursuant to *Ex parte Young*, 209 U.S. 123 (1908), these officials are proper defendants for prospective injunctive relief to halt ongoing constitutional violations.

129. Defendants Camacho and Schlegel, acting in their individual capacities and with deliberate indifference to Plaintiff's constitutional rights, knowingly implemented and enforced policies that

violate clearly established constitutional protections. These defendants knew or reasonably should have known that:

    a. Forcing families to surrender personal devices for configuration constitutes an unreasonable seizure under the Fourth Amendment

    b. Deleting personal files without notice or opportunity to be heard violates the Fourteenth Amendment's guarantee of due process

    c. Conditioning public education on the waiver of constitutional rights violates the unconstitutional conditions doctrine

    d. Their actions exceeded any lawful authority under CIPA, state law, or AACPS policy.

130. These constitutional violations were carried out pursuant to an official policy, practice, or custom adopted and maintained by Defendants, including the Chesapeake Lighthouse Foundation Board of Directors, that the individual defendants created, implemented, and enforced despite actual notice of their unconstitutionality. See Exhibit A.

131. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer injury, including deprivation of constitutional rights, loss of property, invasion of privacy, and denial of equal access to educational opportunities.

**SEVENTH CLAIM FOR RELIEF:**

**VIOLATION OF MARYLAND EDUCATION CODE § 7-308**

132. Plaintiff realleges and incorporates paragraphs 1-116 as if fully set forth herein.

133. Maryland Education Code Annotated § 7-308 strictly limits the circumstances, personnel, and locations in which public school officials may conduct searches. The statute:

    a. Restricts who may search (§ 7-308(b), (c), (f))

    b. Requires "reasonable belief" before searching a student (§ 7-308(c))

    c. Mandates the presence of a third-party witness (§ 7-308(e))

    d. Limits searches to school property or school-sponsored trips (§ 7-308(g))

e. Applies primarily to school property such as lockers (§ 7-308(b)), not personal family property.

The BYOD policy violates every requirement of Maryland law.

134. **Unauthorized Searchers:** Search authority under § 7-308(b) and (c) is limited to principals, assistant principals, or school security guards, with narrow exceptions for trained teachers designated in writing (§ 7-308(f)). Under the BYOD policy:

   a. Device "configuration" is performed by IT staff who are not authorized searchers under the statute

   b. Ongoing surveillance via GoGuardian is conducted by teachers without written designation or required training under § 7-308(f)

   c. Automated AI systems perform searches, which Maryland law does not authorize any non-human system to conduct.

135. No Reasonable Belief: § 7-308(c) requires individualized "reasonable belief" that a student possesses contraband or is violating school rules. The BYOD policy imposes device searches and monitoring on every student without any suspicion, directly contravening the statute.

136. **No Third-Party Witness:** § 7-308(e) mandates that each search be conducted in the presence of a third party. Under the BYOD policy:

   a. Conducting configuration sessions in private, with no additional adult present

   b. Running remote monitoring with no simultaneous observer

   c. Using automated, 24/7 continuous surveillance that operates without any human presence or contemporaneous oversight.

137. Exceeds Geographic Limits: § 7-308(g) limits searches to school premises or school-sponsored trips. The BYOD policy monitors students at home, on private property, and in all off-campus locations, far exceeding the statute's geographic scope.

138. Exceeds Scope of Permissible Searches: Section 7-308(b) allows searches of "the physical plant of the school and its appurtenances including the lockers of students"—school property, not personal family devices. Personal devices are not school "appurtenances."

139. No Prior Notice for Device Searches: Section 7-308(d)(2) states: "The right of the school official to search the locker shall be announced or published previously." The comprehensive nature of device monitoring far exceeds locker searches, yet lacks clear prior notice of the surveillance scope.

140. Violation of Department Regulations: The Department of Education's regulations implementing § 7-308 do not authorize the type of comprehensive, continuous, AI-driven surveillance of personal devices mandated by the BYOD policy.

141. Maryland law represents the state's careful balance between school safety and student privacy. The BYOD policy obliterates this balance by implementing unlimited, suspicionless, continuous searches by unauthorized personnel without any oversight—precisely what the Maryland legislature prohibited.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff David Escobar Jr. respectfully requests that this Court immediately:

A. Permanently declare that Defendants' BYOD policy, as applied at Chesapeake Science Point Elementary School and any other CLF-operated public charter school, violates the Fourth and Fourteenth Amendments to the United States Constitution;

B. Permanently declare that Defendants' BYOD policy, as applied at Chesapeake Science Point Elementary School and any other CLF-operated public charter school, violates Article 24 of the Maryland Declaration of Rights;

C. Permanently declare that Defendants' BYOD policy violates Maryland Education Code § 7-308;

D. Permanently declare that conditioning public education access on device surrender and monitoring constitutes an unconstitutional condition;

E. ENJOIN Defendants CAMACHO, SCHLEGEL, BEDELL, AND SILKWORTH pursuant to Ex parte Young, permanently in their official capacities from:

1. Conditioning access to educational programs, digital learning platforms, or classroom instruction on students' submission of personal devices for configuration at any CLF-operated school;

2. Requiring installation of monitoring software on students' personal devices as a prerequisite for educational access;

3. Mandating deletion of personal files from private devices;

4. Excluding students from any educational activities, assessments, or curriculum based on their refusal to submit personal devices for configuration or monitoring;

5. Enforcing any policy that conditions public education access on waiver of Fourth Amendment rights

F. ENJOIN Defendants from enforcing or implementing the CSPES BYOD policy in any form, and from enforcing any substantially similar or equivalent AACPS or CLF policy at any CLF-operated public charter school that conditions student access to education on surrendering privately-owned devices

G. ENJOIN Defendants from:

1. Conditioning access to educational programs, digital learning platforms, or classroom instruction on students' submission of personal devices for configuration or monitoring at any CLF-operated school

2. Requiring installation of monitoring or surveillance software on students' personal devices as a prerequisite for educational participation

3. Mandating deletion of personal files from privately-owned devices

4. Excluding any student from educational activities, assessments, or curriculum based on refusal to submit a personal device for configuration or monitoring

H. ORDER Defendants to:

1. Suspend all device configuration activities under the CSPES BYOD policy and any substantially similar or equivalent AACPS/CLF policy

2. Suspend scheduling of future configuration appointments

3. Cancel all pending configuration appointments unless the family affirmatively reconsents after full written notice of their constitutional rights

4. Permit students at all CLF-operated schools to participate fully in education through constitutionally adequate alternatives, including but not limited to:

    a. Allowing use of unmanaged personal devices with network-level content filtering

    b. Providing access to school computer labs for digital assignments and assessments

    c. Offering paper-based alternatives for assignments and assessments

    d. Continuing the prior practice of providing school-owned devices

    e. Any other method that does not require surrender of constitutional rights

5. Remove all monitoring software from any previously configured personal devices upon request

6. Provide written notice to all families that device configuration is not mandatory for educational access

I. Award Plaintiff against Defendants Camacho and Schlegel in their individual capacities:

1. Compensatory damages for constitutional violations

2. Punitive damages for willful and deliberate violations of clearly established rights

J. Award Plaintiff damages against all appropriate Defendants:

1. Nominal and compensatory damages as permitted by law;

2. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988

3. Pre- and post-judgment interest

K.  To the extent permitted by Maryland's limited waiver of sovereign immunity under Maryland Code, State Government § 12-104 (up to $400,000), award damages against the Board of Education for violations of state law;

L.  SCHEDULE an immediate hearing on a preliminary injunction within 10 days;

M.  WAIVE or set at a nominal amount any Rule 65(c) bond requirement, as this public interest case seeks to prevent ongoing constitutional violations, presents no risk of monetary harm to Defendants, and involves no private commercial interest.

N.  Grant such other and further relief as this Court deems just and proper.

**VERIFICATION**

I, David Escobar Jr., declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that:

1. I am the Plaintiff in this action and the parent of A.E., a minor child who is enrolled at Chesapeake Science Point Elementary School for the 2025-2026 school year.

2. I have personal knowledge of the facts set forth in this Complaint, except those stated upon information and belief, and if called as a witness, I could and would testify competently to these facts.

3. The factual allegations in this Complaint concerning the BYOD policy, its requirements, the school's communications to myself and other parents, and the impact on my family are true and correct to the best of my knowledge.

4. I received the June 3, 2025 email from the school announcing the BYOD policy and have reviewed all accompanying documentation. (Exhibits A and B).

5. On July 22, 2025, The Civic Ledger, a civic journalism initiative I founded, sent communications to Principal Camacho and AACPS legal counsel expressing constitutional concerns about the policy. No substantive response was received. (Exhibit D).

6. My daughter will be required to use a configured device to participate fully in her education, and absent court intervention, we will suffer the constitutional violations described herein.

7. The contents of this Complaint are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this _11_ day of August, 2025, at _Greenbelt_, Maryland.

David Escobar

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

David Escobar Jr.
1628 Severn Run Ct.
Severn, MD 21144
Cell: (240) 429-2465
david.j.escobar2@gmail.com
Pro Se Plaintiff