**DAVID ESCOBAR JR.,**
1628 Severn Run Ct.
Severn MD, 21144
Plaintiff in Pro Se

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**DAVID ESCOBAR JR.**, individually and as
parent of **A.E.**, a minor,

   Plaintiff,

  v.

**Yilmaz Zayn Ak**, in his official capacity as CEO
of Chesapeake Lighthouse Foundation, and in his
individual capacity,
**TABATHA CAMACHO**, in her official capacity
as Principal of Chesapeake Science Point
Elementary School,

**DR. MARK BEDELL**, in his official capacity as
Superintendent of Anne Arundel County Public
Schools, and in his individual capacity,

**BOARD OF EDUCATION OF ANNE
ARUNDEL COUNTY**,

2644 Riva Road

Annapolis, MD 21401,

**CHESAPEAKE LIGHTHOUSE FOUNDATION
("CLF"),**

6151 Chevy Chase Dr.

Laurel, MD 20707

Case No.: 25-cv-02645

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF**

(Violations of Fourth and Fourteenth Amendment

Rights; Unconstitutional Conditions)

**DEMAND FOR JURY TRIAL**

**CHESAPEAKE LIGHTHOUSE FOUNDATION (CLF) BOARD OF DIRECTORS**,

6151 Chevy Chase Dr.

Laurel, MD 20707

    Defendant.

**INTRODUCTION**

    This case challenges a new school policy that forces likely hundreds of families to make an unconstitutional choice: surrender their privacy and property rights, or risk exclusion from essential education. On June 3, 2025, Chesapeake Science Point Elementary School ("CSPES") announced that it would no longer issue school-owned devices. Instead, families must supply personal laptops and submit them for mandatory "configuration" that deletes all local files and installs surveillance software.

    This policy marks a dramatic shift. For years, CSPES provided Chromebooks through its appropriated funding through Anne Arundel County Schools ("AACPS"). Today, under the banner of budget cuts, the school pushes those costs onto families, at a price paid not only in dollars, but in constitutional rights. As part of this shift, the configuration process erases all personal content and installs GoGuardian software, giving school officials real-time access to student screens, browsing history, documents, and online activity—both at home and at school.

    This is not optional. Families who refuse configuration are effectively denied access to education: students cannot log into learning platforms, complete assignments, or take digital assessments. A limited supply of rental devices—available for $100 per year—adds further economic pressure.

    The policy transforms every child's personal device into a government-controlled surveillance tool. It extends state power into the home, weaponizing access to education to compel the surrender of digital

autonomy. This surveillance far exceeds any legitimate pedagogical purpose and violates fundamental rights under the U.S. Constitution and Maryland Declaration of Rights.

The government may not do indirectly what it cannot do directly. Public schools cannot force families into waiving constitutional protections as a condition for receiving education. The state's authority over classroom instruction does not extend to the forced configuration, search, and control of private property.

Plaintiff seeks immediate declaratory and injunctive relief to end this unconstitutional practice and ensure that no family must choose between their children's education and their civil liberties.

**PARTIES**

1. Plaintiff DAVID ESCOBAR JR. is a resident of Anne Arundel County, Maryland, and the parent of A.E., a minor student enrolled at Chesapeake Science Point Elementary School and subject to the school's Bring Your Own Device Policy. He brings this action individually and on behalf of his minor daughter pursuant to Fed. R. Civ. P. 17(c).

2. Defendant YILMAZ ZAYN AK is the CEO of Chesapeake Lighthouse Foundation ("CLF"). Acting under color of state law, he drafted and issued the BYOD policy and, after Board approval on February 15, 2024, directed CLF-wide implementation for the 2025–26 school year by instructing CLF principals to require parent-provided devices configured with CLF-mandated software. He is sued in his official capacity and, for damages, in his individual capacity.

3. Defendant TABATHA CAMACHO is the Principal of Chesapeake Science Point Elementary School ("CSPES"). Defendant is responsible, under color of state law, for administering the Bring Your Own Device policy at CSPES and ensuring CSPES' compliance with all legal requirements. Defendant is sued in her official capacity.

4. Defendant DR. MARK BEDELL is the Superintendent of Anne Arundel County Public Schools ("AACPS"). The Superintendent is charged with implementing all AACPS policies and ensuring

compliance with all legal requirements. He is sued in his official capacity and, for damages, in his individual capacity.

5. Defendant BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY is the governing body of the Anne Arundel County Public Schools system. The Board of Education of Anne Arundel County has authority over all AACPS policies and ensures compliance with all legal requirements and is sued as a public entity.

6. Defendant CHESAPEAKE LIGHTHOUSE FOUNDATION ("CLF") is a Maryland non-profit corporation and public charter school operator acting under color of state law for purposes of 42 U.S.C. §1983. CLF is responsible for the management and operation of Chesapeake Science Point Elementary School ("CSPES") under a charter authorized by the Anne Arundel County Public Schools ("AACPS") Board of Education. CLF implements and enforces the policies adopted by its governing board, including the Bring Your Own Device ("BYOD") policy challenged in this action.

7. Defendant CHESAPEAKE LIGHTHOUSE FOUNDATION BOARD OF DIRECTORS is the governing body of CLF and the final policymaking authority for CLF-operated schools, including CSPES. On February 15, 2024, the Board adopted the BYOD policy and authorized or knowingly permitted its CLF-wide implementation; in the alternative, the Board delegated scope and timing to the CEO and ratified the CLF-wide rollout by allowing it to proceed. The Board is sued for declaratory and injunctive relief and, as appropriate, for damages under 42 U.S.C. § 1983.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983, and has supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367(a).

9. This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and injunctive relief under Fed. R. Civ. P. 65.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all defendants reside in this judicial district and all events giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

### Background

11. The Chesapeake Lighthouse Foundation ("CLF") is a Maryland 501(c)(3) nonprofit education management company. Although a private entity, CLF acts under color of state law as a de facto public institution by administering and operating public charter schools under authority delegated by county boards of education. CLF operates seven charter schools—two in Anne Arundel County (Chesapeake Science Point Schools) and five in Prince George's County (Chesapeake Math & IT Academy Schools)—and is responsible for the education of more than 4,000 students across both counties. Charter schools are part of the public school system. See Md. Code, Educ. §§ 9-101, 9-102.

12. The Chesapeake Lighthouse Foundation Board of Directors is CLF's governing body. The Board acts under color of state law as the final policymaking authority for the schools within CLF's charter system. Its decisions on operations, policies, and discipline carry the same force as those of county boards of education.

13. On February 15, 2024, the CLF Board approved a Bring Your Own Device ("BYOD") policy. CLF then issued a CLF-wide BYOD regulation and FAQ titled "CLF Public Charter Schools Electronic Device and BYOD Policy," covering both CMIT and CSP schools and requiring parents to provide a Chromebook, sign a "Device Permission Form," and permit installation of the Google Admin Console for remote application control. The document states that "CLF schools' Internet connection is protected by an Internet content filter," includes an "Optional Rental Program" at $100 per year, and lists approval by "Yilmaz Ak, CEO." See Exhibit G (CLF BYOD Policy). The Board minutes state the purpose was to "mak[e] the principal's job easier" by shifting device provision from the school to parents and do not cite a budget shortfall, ESSER

expiration, or Blueprint funding changes. See Exhibit A (Feb. 15, 2024 CLF Board Meeting Minutes, p. 7).

14. Nearly one year later, in February 2025, CLF and Chesapeake Science Point Elementary School ("CSPES") publicly justified the BYOD policy on the grounds of an alleged budget shortfall, citing both the expiration of ESSER Chromebook funding and a "12% loss in state funding" under the Blueprint for Maryland's Future law. See Exhibit B (CSPES BYOD Program Email Justification Statement and Policy, June 3, 2025, p. 1). This justification materially differs from the rationale documented in the February 2024 Board minutes.

15. Defendants' claim of a "12% loss in state funding under the Blueprint for Maryland's Future law" is inaccurate. The Blueprint mandates annual increases in per-pupil foundation funding, from $8,310 in 2022–23 to $8,642 in 2023–24, rising to $12,365 by 2032–33. Blueprint for Maryland's Future, "Funding" (Oct. 17, 2024), available at https://blueprint.marylandpublicschools.org/funding-2/

16. On December 3, 2024, the Maryland State Board of Education issued a ruling in In the Matter of Commensurate Funding for Frederick County Charter Schools that expanded charter school funding entitlements, requiring local boards to include all funding streams when calculating commensurate funding and to negotiate central services in good faith. Maryland State Board of Education Opinion No. 24-27-A (Dec. 3, 2024).

17. On May 6, 2025, the Governor signed the Excellence in Maryland Public Schools Act, which preserved the vast majority of Blueprint funding despite state budget concerns, maintaining per-pupil foundation amounts at planned levels.

18. Taken together, these facts show that Defendants' public justification for the BYOD policy conflicts with both actual funding trajectories and subsequent state policy, supporting an inference of pretext.

**Policy Development and Implementation**

19. Following Board approval, CEO Ak issued a CLF-wide directive requiring implementation beginning in the 2025–26 school year and directed each principal—including CSPES's principal—to require parent-provided devices configured with CLF-mandated monitoring and control software, as described in CLF's BYOD regulation and FAQ. Parents must sign the Device Permission Form and permit installation of the Google Admin Console for remote management. See Exhibit G.

20. CLF policy. The BYOD mandate is official CLF policy attributable to its final policymakers: the Board adopted the policy and authorized or knowingly permitted its CLF-wide implementation; in the alternative, the Board delegated scope and timing to the CEO and ratified the CLF-wide rollout with knowledge of its terms. CLF's BYOD regulation labels the policy "CLF Public Charter Schools Electronic Device and BYOD Policy," lists CMIT/CSP schools, and shows approval by the CEO. See Exhibit G.

21. Implementation inconsistency (CLF vs. CSPES). CLF's written BYOD regulation requires a signed Device Permission Form and installation of the Google Admin Console for remote management. By contrast, CSPES's BYOD letter/FAQ does not mention any permission form. Instead, it tells families a device must be configured in the school's domain and that, without configuration, the student cannot access school Wi-Fi or required computer-based assessments; it also warns that local files will be deleted during configuration while claiming there will be "no restriction" on the device. See Exhibit B.

22. Because CLF's policy requires a signed permission form, CSPES's omission of that form means there was no documented consent at the school level. And even if a form were presented, making a child's access to instruction contingent on enrolling a family-owned device into the school's management domain (with deletion of local files and remote control enabled) is coercion, not consent.

23. The government cannot require a person to waive constitutional rights to receive a public benefit. Conditioning access to public education on (i) surrendering ongoing control of a privately owned

device and (ii) signing a "permission" paper that operates as a liability waiver violates the unconstitutional-conditions doctrine. A form cannot waive a child's constitutional protections, and a public school may not shift its own legal obligations onto parents through a forced "permission" slip.

24. Even if Defendants offer a $100 "optional rental" Chromebook, that fee does not convert ongoing remote access to a privately owned device into voluntary consent. Conditioning a child's access to public education on either (a) surrendering control of a family computer or (b) paying a fee to avoid that surrender imposes an unconstitutional condition. A coerced payment is not consent; and the availability of school-managed devices confirms there are less intrusive means to achieve any legitimate goals without invading family property.

25. Defendant Principal Tabatha Camacho is responsible for enforcing the BYOD policy at CSPES. Under her direction, parents were required to surrender personal devices for configuration with CLF-mandated software that allows ongoing monitoring, access, and control by school officials. This configured device was then to be used by students for "computer-based assessments and assignments." See Exhibit B.

26. Monell liability — CLF. CLF is liable under 42 U.S.C. § 1983 because the BYOD mandate is official CLF policy adopted by its final policymaker (the CLF Board) and implemented CLF-wide by the CEO with the Board's authorization, delegation, or ratification. See Exs. A, G. CLF's policy and rollout were a moving force behind the violations alleged.

**AACPS Authorizer Responsibility, Notice, and Ratification**

27. AACPS, through its Board of Education, is the chartering and oversight authority for all schools in Anne Arundel County including CSPES and retains oversight responsibility to ensure charter compliance with law and policy. Md. Code, Educ. §§ 9-106(a), 9-107. That oversight includes ensuring constitutional compliance by charter operators within the AACPS system.

28. AACPS in a Maryland Public Information Act response, confirmed it has no districtwide BYOD mandate for non-charter students and does not require monitoring software on student-owned

devices. See Exhibit C. The CSPES/CLF BYOD rule is therefore a charter-operator policy adopted within AACPS's jurisdiction, subject to AACPS oversight.

29. On July 22, 2025, Plaintiff sent a written notice by email to the Anne Arundel County Public Schools Office of General Counsel, copying CSPES administration, identifying the BYOD policy's constitutional defects and requesting immediate suspension of configuration. See Exhibit D (email and attachments).

30. The AACPS Office of General Counsel advises the Superintendent on legal risk and charter-oversight matters and, as a matter of regular practice, briefs the Superintendent on significant issues. Upon information and belief, Dr. Bedell received, or was briefed on, Plaintiff's July 22, 2025 notice in the ordinary course of AACPS legal reporting. This allegation is based on Plaintiff's notice to the AACPS Office of General Counsel, which reports to and routinely briefs the Superintendent on charter-oversight and legal-risk matters.

31. Despite that notice and his authority to direct corrective action or halt implementation pending review, Dr. Bedell took no action. Configuration appointments and device enrollments proceeded on and after August 8–10, 2025. See Exhibit E.

32. Dr. Bedell's failure to act in the face of known, ongoing seizures and searches of family-owned devices constitutes deliberate indifference and/or tacit authorization and was a proximate cause of Plaintiffs' injuries.

33. After notice, AACPS did not direct CLF to suspend or rescind the policy, did not require a non-intrusive alternative for access to instruction, and did not issue corrective guidance. Permitting implementation to proceed after notice constitutes ratification or, at minimum, deliberate indifference, by AACPS to ongoing constitutional violations.

34. AACPS, acting through its Board and Superintendent, had oversight authority, received notice, and permitted implementation to proceed, evidencing ratification and a custom of non-intervention that foreseeably allowed unconstitutional policies to operate in AACPS schools.

AACPS's failure to supervise and to enforce constitutional compliance was a moving force behind the injuries alleged.

**Standing**

35. A.E. is a minor child enrolled at CSPES for the 2025–26 school year. Like all 500+ students at CSPES, A.E. must use a digital device to access curricular materials, classroom platforms, and essential communications.

36. A.E. has a constitutionally protected right to be free from unreasonable searches and seizures under the Fourth Amendment and Article 26 of the Maryland Declaration of Rights. She also has protected liberty and property interests in the use of her personal educational device under the Fourteenth Amendment and Article 24. The forced installation of surveillance and control tools on her personal device—without individualized suspicion, without judicial authorization, and without any meaningful consent or due process protections—constitutes an unconstitutional search and seizure and a deprivation of liberty and property without due process of law. These intrusions are not limited to school hours or school-related activities, but extend into the home and encompass A.E.'s private communications, personal files, and digital behavior.

37. To comply with the BYOD policy, A.E. will use a personal laptop owned and maintained by her parent, Mr. David Escobar Jr. This device is not school-issued property; it is private property used for household and personal purposes. CSPES has required that this privately owned computer be configured with persistent device-management tools and student-surveillance software that grant the school ongoing access, control, and data-monitoring capabilities.

38. Standing. Mr. Escobar has standing in two capacities: (a) as parent, asserting the right to direct his child's education free from unconstitutional conditions; and (b) in his own right, because Defendants required invasive monitoring software on his privately owned device, effecting a warrantless search and seizure and granting ongoing government access without judicial authorization or individualized suspicion.

39. Mr. Escobar also brings this complaint as next friend of A.E., whose constitutional rights are independently implicated and infringed by CSPES's BYOD policy.

**The Mandatory Configuration Process**

40. CSPES told families that IT staff will configure devices "free of charge through a brief 10–15-minute appointment…starting in August," presenting the process as a routine convenience. See Exhibit B.

41. In reality, the mandatory configuration process requires:

    a. registration of the device to the school domain with ongoing administrative control

    b. installation of Google's management platform for student emails, devices, and apps

    c. deployment of GoGuardian monitoring software for content filtering and student activity monitoring

    d. automatic and irreversible deletion of all local files on the device

    e. installation of testing applications and school-based apps

    f. configuration for automatic connection to school Wi-Fi

42. The FAQ states: "Since your device will be configured and registered to the school domain, the local files will be deleted automatically." See Exhibit B. Families were not provided with a documented, school-supported backup option.

43. Forcing a family-owned computer into remote management, with continuous monitoring capability and deletion of private data, is a search and seizure and a deprivation of property and liberty interests. Any purported "permission" is coerced by the threat of academic/attendance consequences, and thus does not supply voluntary consent. The unconstitutional-conditions doctrine bars conditioning access to public education on surrendering these rights

44. CSPES categorically prohibits all non-Chrome OS devices, stating "your device has to be a Chrome OS system operated device. Windows, Mac, Android and iOS devices are not compatible with the school." (Exhibit B). This compels families to purchase a specific device even when they

already own capable hardware and is not narrowly tailored given less-intrusive alternatives (e.g., school-issued devices; browser-based access without device-level control).

45. As a nominal alternative, families may rent a school-provided device for $100 per school year, but only "a limited number of devices are available." The rental fee may be waived only upon submission of financial hardship documentation, creating unnecessary bureaucratic barriers to access. See Exhibit B. A fee-based opt-out does not convert surveillance of family devices into voluntary consent and underscores that the school can meet its goals with school-managed hardware

46. Defendants also require that students maintain a configured Chromebook "during their entire enrollment here at our school," making clear this is not a temporary or transitional measure but a permanent condition of attendance—and a continuing surrender of rights. See Exhibit B. This supports irreparable-harm and balance-of-equities findings for injunctive relief.

**Defendants' Misleading Representations and Admissions**

47. Defendants make several misleading claims about the BYOD policy's impact while simultaneously admitting its true nature:

   a. They claim "there won't be any restriction on your device" while mandating installation of Google's management platform and GoGuardian monitoring software, both of which impose continuous administrative control. See Exhibit B.

   b. They state students "can use your personal email, too" while maintaining the ability to monitor all communications. See Exhibit B.

48. Defendants describe configuration as necessary merely to "authorize your device for our network," but their own materials show it goes well beyond network authorization by installing management/monitoring tools, enforcing domain registration, and triggering deletion of local files. See Exhibit B.

49. Defendants also admit the policy is driven by cost-cutting objectives, stating: "The BYOD program and other measures will allow the school to save significant expenses and continue offering its current programs with no cuts." See Exhibit B.

50. To justify surveillance components, Defendants invoke the Children's Internet Protection Act ("CIPA") and a duty to "protect students from harmful online content." See Exhibit B. But CIPA does **not** require installation of permanent monitoring software on family-owned devices or wholesale control over such devices:

   a. CIPA applies to schools/libraries that receive E-rate discounts for Internet access or internal connections; entities receiving only telecommunications services are not subject to CIPA's filtering requirements.

   b. When CIPA applies, the school must "enforce the operation of the technology protection measure during use of its computers with Internet access." The rule focuses on school-owned computers, not privately owned family devices.

   c. The required certification expressly contemplates cases where Internet access/internal connections "will not be used in conjunction with a computer owned by the recipient(s)," in which case the CIPA filtering obligations do not apply.

   d. The FCC also makes clear that CIPA does not require tracking of Internet use by minors or adults, undermining any claim that continuous, device-level surveillance is mandated.

   e. Related FCC/USAC guidance confirms CIPA does not extend to third-party (family) devices; filtering may be enforced at the network level without taking control of personal hardware. Defendants nonetheless acknowledge that their "managed devices" use "tools like Google and GoGuardian to maintain appropriate filtering and monitoring," confirming that the purpose extends beyond content filtering into full-device surveillance. See Exhibit B.

51. CIPA also vests local control over what is "inappropriate for minors" and bars federal agencies from dictating criteria—underscoring there is no federal requirement to seize control of family hardware to comply.

52. Defendants nonetheless acknowledge their "managed devices" use "tools like Google and GoGuardian to maintain appropriate filtering and monitoring," confirming the program's purpose extends beyond simple content filtering to persistent device management. See Exhibit B.

**Economic Coercion and Lack of Alternatives**

53. The policy presents families with a coercive, three-way choice:

    a.  Purchase a Chromebook (typically $200-400) and surrender it for configuration

    b.  Pay $100 annual rental fee (if devices are available)

    c.  Have their child unable to access digital learning resources

54. There is no option to decline participation while maintaining full educational access, as Defendants' own materials state that students must have configured Chromebooks "during their entire enrollment here at our school," making compliance a permanent condition of attendance. See Exhibit B.

55. The policy imposes a wealth-based burden and an unconstitutional condition. Families who do not surrender control over a family-owned device must pay to avoid the intrusion, and even that option is limited and conditioned on hardship documentation. See Exhibit B. AACPS confirms no districtwide BYOD requirement for non-charter students, underscoring that this was a discretionary CLF/Board choice within AACPS's jurisdiction, not an unavoidable mandate. See Exhibit C. Applied CLF-wide, the policy affects more than 4,000 students (see Exhibit G), magnifying both financial and constitutional harms. The unconstitutional-conditions doctrine bars conditioning access to public education on either (i) surrendering device privacy and control or (ii) paying a fee to avoid that surrender.

**Plaintiff's Experience and Ongoing Harm**

56. Mr. Escobar's daughter A.E. is enrolled at Chesapeake Science Point Elementary School for the 2025-2026 school year.

57. Mr. Escobar has been informed that A.E. must have a configured Chromebook to participate fully in educational activities. See Exhibit B.

58. If Mr. Escobar provides a personal device for configuration:

   a. All personal files will be automatically deleted. See Exhibit B.

   b. The device will be subject to continuous monitoring through Google's management tools and GoGuardian software. See Exhibit B.

   c. Private family information, including documents, photographs, and communications unrelated to school activities, may be exposed to school administrators.

   d. The device's functionality and administrative settings will be permanently altered.

   e. Any family member who uses the configured device will be subject to school surveillance, effectively converting a shared household computer into a government-controlled tool and eliminating its use for private purposes.

59. If Mr. Escobar declines to provide a device for configuration or pay the $100 annual rental fee, A.E. will be denied equal access to core educational opportunities, including the ability to complete digital assignments, take computer-based assessments, and participate in required elements of the curriculum.

60. Students enrolled in other AACPS-operated schools—including those in the same geographic district—are not subject to the BYOD requirement. These comparator students are provided with school-owned devices at no cost, face no requirement to purchase personal devices, and are not compelled to submit those devices to government configuration, monitoring, or domain control. See Exhibit C.

61. This disparate treatment imposes unique financial and privacy burdens on CSPES families that are not imposed on similarly situated public school students in Anne Arundel County. The difference in treatment is not justified by any legitimate educational necessity, as AACPS's own

technology program provides equal or greater access to digital learning without commandeering privately-owned devices.

62. Anne Arundel County Public Schools (AACPS) issues Chromebooks managed by the district's Technology Office for in-school use and operates a Device Loaner Program for home use. Families in those schools are never required to install monitoring software on personal devices, surrender domain control, or permit continuous surveillance within their homes.

63. AACPS's technology practices demonstrate that the objectives claimed by CSPES—student device access, online safety, and compliance with the Children's Internet Protection Act—can be achieved without the severe intrusions and economic burdens imposed by the BYOD policy. The disparity in treatment between CSPES families and other AACPS families constitutes unequal treatment under color of state law.

64. On July 22, 2025, The Civic Ledger—a civic journalism initiative founded by Mr. Escobar—sent emails to both Principal Camacho and AACPS legal counsel attaching a detailed letter outlining constitutional concerns with the BYOD policy. See Exhibit D (Communications from The Civic Ledger, July 22, 2025).

65. Despite receiving this formal notice of potential constitutional violations, Defendants provided no response and proceeded with implementation of the policy unchanged. This is evidenced by the August 8, 2025 parent newsletter confirming configuration appointments and the August 15, 2025 schedule nearly 100 appointments already filled. See Exhibit E.

66. Mr. Escobar and A.E. face ongoing harm from this unconstitutional policy, including unlawful searches and seizures of private property, compelled surveillance of household devices, denial of equal access to public education, and unequal treatment compared to other AACPS students who receive school-owned devices without intrusive monitoring. This harm will continue for the duration of A.E.'s enrollment unless this Court intervenes.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF:**

**FOURTH AMENDMENT TO THE U.S. CONSTITUTION – UNREASONABLE SEARCH AND SEIZURE**

67. Plaintiff realleges and incorporates paragraphs 1-66 as if fully set forth herein.

**Unconstitutional Seizure**

68. The Fourth Amendment protects individuals against unreasonable searches and seizures by government actors, including public schools and their agents. Requiring families to surrender a privately owned Chromebook for "configuration" is a seizure because it meaningfully interferes with the owner's possessory interests and control.

69. The automatic and irreversible deletion of all local files during configuration constitutes a permanent seizure of personal property—digital photographs, documents, communications, and other data—that can never be recovered. See Exhibit B.

70. This seizure occurs without:

    a. A warrant

    b. Any individualized suspicion of wrongdoing

    c. Exigent circumstances

    d. Voluntary consent, as purported "consent" is coerced by the threat of exclusion from essential educational activities.

71. The seizure is unreasonable because it is unlimited in both scope and duration. The school retains continuing dominion over the device through mandatory installation of management software, GoGuardian surveillance tools, and domain registration, ensuring ongoing governmental control for the entirety of the student's enrollment.

**Configuration Search**

72. Handing over a family computer for a "10–15 minute" appointment exposes the device's contents to government inspection. See Exhibit B.

73. During configuration, school IT staff obtain direct access to the device and can view file structures, local storage, installed applications, cached data, and linked accounts to complete

17

installation and policy enrollment. Families receive no limitation, audit, or log of what is viewed or copied.

74. These circumstances create a warrantless, suspicionless search of a private device, without any policy safeguards tailored to prevent access to non-school information.

**Ongoing Surveillance Search**

75. After enrollment in CLF's Google Workspace domain, administrators exercise continuous administrative control via the Google Admin Console (e.g., pushing policies and apps, locking settings, and enforcing device restrictions). See Exhibit G.

76. Administrators can enable/disable hardware features through policy, deploy applications that request camera/microphone permissions, and lock privacy settings, leaving families unable to reverse these controls without school approval.

77. These controls follow the device into the home and operate at all hours unless the school changes policy. Families have no practical way to know when policies, permissions, or monitoring are active.

78. GoGuardian adds a second surveillance layer. Vendor materials describe real-time screen viewing, tab control, screen lock, URL logging, AI-flagging, and alerts, with out-of-school monitoring requiring admin configuration to limit surveillance. See Exhibit F.

79. Together, domain control (Google Admin) and GoGuardian create persistent, suspicionless monitoring of activity on a family computer used inside the home.

**Why These Searches and Seizures are Unreasonable**

80. Electronic devices receive heightened Fourth Amendment protection due to their capacity to store vast amounts of personal information, including private communications, photographs, financial data, medical information, and intimate details of family life.

81. Even under *New Jersey* v. *T.L.O.*, 469 U.S. 325 (1985), which permits limited school searches on reasonable suspicion, the Supreme Court emphasized that such searches must be justified at inception and reasonable in scope. The BYOD policy fails both requirements:

      a.   Not justified at inception - there is no individualized suspicion of any wrongdoing

      b.   Not reasonable in scope - wholesale access to all family data far exceeds any educational purpose

82. In *Safford Unified School District* v. *Redding*, 557 U.S. 364 (2009), the Supreme Court held that even a search with some suspicion can violate the Fourth Amendment if "the content of the suspicion failed to match the degree of intrusion." The same principle applies here: no suspicion justifies an intrusion of this magnitude.

83. In *G.C.* v. *Owensboro Public Schools*, 711 F.3d 623 (6th Cir. 2013), the court rejected a school's search of a student's phone absent reasonable suspicion that the device contained evidence of wrongdoing or danger.

84. The BYOD policy is far more intrusive than the unconstitutional searches in *Redding* and *G.C.*:

      a.   It applies without any suspicion

      b.   Not limited to school-related content but encompasses all family data

      c.   It is not a one-time search but ongoing, indefinite monitoring and surveillance

      d.   Not responding to any infraction but preemptively applied to all students

85. In *Riley v. California*, 573 U.S. 373 (2014), the Court recognized that modern electronic devices contain "the privacies of life" and cannot be searched without a warrant, even incident to arrest. If police cannot do this, school officials certainly cannot impose such searches on all students as a condition of attendance.

86. *Ogletree v. Cleveland State University*, 647 F.Supp. 3d 602 (N.D. Ohio 2022), further confirms that technology-based intrusions into the home—even for educational purposes—violate the Fourth Amendment absent strong justification.

87. The BYOD policy obliterates the line between limited educational oversight and unlimited government intrusion. No parent would voluntarily allow a government employee to enter their home, browse through the family computer, copy its contents, and install monitoring tools. This policy accomplishes that same result by forcing the device into school control.

**CIPA Does Not Authorize the Intrusion**

88. Defendants cite the Children's Internet Protection Act (CIPA) as justification, framing the configuration process as necessary to comply with federal law. In reality, CIPA's requirements, found at 47 C.F.R. § 54.520, apply only to devices "owned by the recipient" school. The FCC's own regulations expressly allow schools to certify that devices not owned by the school will not be subject to these measures.

89. Nothing in CIPA authorizes or requires the forced surrender of privately-owned devices, the deletion of personal files, the installation of surveillance software, or permanent monitoring. By invoking CIPA, Defendants are using a federal compliance pretext to justify wholesale configuration as a shortcut to overcome technical hurdles of introducing private devices onto AACPS networks, rather than implementing less intrusive, lawful alternatives.

90. Even for school-owned devices, CIPA requires only a "technology protection measure" to block access to harmful content, not continuous behavioral tracking, administrative control over personal hardware, or the ability to activate cameras and microphones in the home.

91. When certifying CIPA compliance, schools must state only that they are "enforcing a policy of Internet safety that includes measures to block or filter Internet access for any computers that are owned by the recipient" (47 C.F.R. § 54.520(c)). The regulations further provide that a school may certify that "the particular computer for which Internet access or internal connections are being sought will not be used in conjunction with a computer owned by the recipient(s)" (§ 54.520(c)(1)(iii)). These provisions make clear that CIPA's filtering requirement applies exclusively to school-owned devices and that privately-owned devices may be excluded from such measures altogether. CSPES's BYOD policy directly contradicts this regulatory framework by imposing monitoring and administrative control over family-owned devices that CIPA expressly does not reach.

**SECOND CLAIM FOR RELIEF:**

**FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS**

92. Plaintiff realleges and incorporates paragraphs 1–91 as if fully set forth herein.

93. Parents have a fundamental right to direct the upbringing and education of their children, free from unwarranted government intrusion.

94. The right to a public education, once provided by the state, cannot be arbitrarily denied or conditioned upon the surrender of other constitutional rights.

95. The home and family sphere receive the strongest constitutional protection. Forcing persistent government control over a family-owned computer used in the home intrudes on that sphere.

96. Defendants' BYOD policy infringes upon these rights by conditioning a student's access to education on:

    a. The compelled surrender of a privately owned device for configuration

    b. The deletion of all locally stored personal files

    c. installation of persistent monitoring and administrative control tools that follow the device into the home. See Exhibits B, G.

97. These intrusions burden parental decision-making about a child's technology use in the home and coerce families to accept continuous school control—or pay a fee to avoid it. See Exhibits B, G.

98. No compelling governmental interest justifies these intrusions, and the policy is not narrowly tailored to achieve legitimate educational purposes.

99. Less restrictive alternatives exist, including school-issued devices, a truly voluntary program, or network-level filtering that does not seize control of family hardware. See 28–30, 54–56; Exhibits B, C, G.

100. In the alternative, even if no fundamental right is implicated, the policy is arbitrary and irrational and shocks the conscience: it imposes 24/7 device control in the home, relies on a post hoc budget story contradicted by contemporaneous minutes, and disregards obvious, less-intrusive options used elsewhere in AACPS. See Exhibits A–C, G.

101.  Defendants' acts and omissions therefore violate substantive due process under the Fourteenth
Amendment. Plaintiffs are entitled to declaratory and injunctive relief, and to damages as allowed
by law.

**THIRD CLAIM FOR RELIEF:**

**FOURTEENTH AMENDMENT – PROCEDURAL DUE PROCESS**

102.  Plaintiff realleges and incorporates paragraphs 1–101 as if fully set forth herein.

103.  Students have a protected interest in access to public education. Goss v. Lopez, 419 U.S. 565,
574 (1975). Families also have protected property interests in a privately owned computer, the
locally stored data it contains, and the use and control of that device in the home.

104.  Personal electronic devices and the data they contain constitute "property" protected by the Due
Process Clause.

105.  The BYOD policy deprives these interests by:

    a.  requiring surrender of a family device for domain enrollment

    b.  deleting all local files automatically during enrollment, with no school-provided backup
option

    c.  imposing ongoing administrative control that alters device settings and limits family
control. See Exhibits B, G.

    d.  Refusing enrollment results in loss of access to required digital instruction. See Exhibits
B, G.

106.  Defendants provided no meaningful process to protect these interests. There is no:

    a.  advance, individualized notice of the specific deprivations (file deletion, domain lock,
monitoring scope)

    b.  opportunity to challenge or appeal the requirement before enrollment

    c.  opt-out that preserves equal access to instruction

    d.  neutral decisionmaker or record of decision procedure to protect or recover personal data
before deletion. See Exhibits B, G.

107.  Because these deprivations are carried out by policy and with advance scheduling, pre-deprivation process is feasible and required. Post-deprivation remedies cannot cure the permanent loss of local files or the loss of control once the device is enrolled.

108.  Under Mathews v. Eldridge, 424 U.S. 319, 335 (1976):

   a.  Private interests: strong (continued access to education; control of a family computer; preservation of personal data).

   b.  Risk of erroneous deprivation: high (no hearing, no opt-out, no logs, no backup procedure).

   c.  Value of additional safeguards: substantial (written notice of specific actions; school-provided device or non-device-level access; a simple pre-enrollment review; data-backup protocol; written consent that is revocable).

   d.  Government burden: minimal (the district already can use school-managed devices and network-level filtering, see Exhibits B, C, G).

109.  AACPS, as authorizer and overseer, had notice of these deprivations and failed to provide or require basic procedures (notice, opt-out with equal access, neutral review), further denying procedural due process. See Exhibits B–E.

110.  Defendants' actions and omissions violate the Fourteenth Amendment's guarantee of procedural due process. Plaintiffs are entitled to declaratory and injunctive relief, and to damages as permitted by law.

**FOURTH CLAIM FOR RELIEF:**

**FOURTEENTH AMENDMENT – EQUAL PROTECTION**

111.  Plaintiff realleges and incorporates paragraphs 1–110 as if fully set forth herein.

112.  The Equal Protection Clause bars the State from treating similarly situated students differently without at least a rational basis. When a policy burdens fundamental rights (e.g., parental decision-making in the home; freedom from unreasonable searches), heightened scrutiny applies.

113.  Students at Chesapeake Science Point Elementary School are similarly situated to other elementary students in Anne Arundel County Public Schools with respect to access to instruction and required technology.

114.  Under CLF policy, CSPES/CLF students alone are required to:

    a.  Purchase or provide a privately owned device for school use

    b.  Surrender it for government configuration and monitoring (Google Admin + GoGuardian)

    c.  Pay an annual rental fee if they cannot supply such a device

115.  Students in all other AACPS schools—including those within the same district—are provided school-owned Chromebooks at no cost, without any requirement to submit personal devices for configuration or monitoring. See Exhibit C.

116.  This disparate treatment imposes additional financial burdens and privacy intrusions on CSPES families without any rational basis related to legitimate educational objectives.

117.  This disparate treatment imposes wealth-based burdens and home-privacy intrusions on CSPES families that others in AACPS do not face, and it is not rationally related to a legitimate educational objective. AACPS's own practices show the same aims (device access, online safety, CIPA compliance) can be achieved without commandeering family hardware. See Exhibits B, C, G.

118.  Even if cost-saving is a legitimate interest, the policy is irrational because it singles out only CLF students while less intrusive, feasible alternatives exist and are already used in AACPS (school-issued devices; network-level filtering). The limited rental pool and fee requirement further undercut any rational tailoring. See Exhibits B, G.

119.  Monell (entities). The unequal treatment is attributable to:

    a.  CLF's official policy adopted by its final policymaker and implemented CLF-wide (Exhibits A, G)

b.  AACPS's ratification and custom of non-intervention after notice, permitting the policy to operate within AACPS. See Exhibits B–E. These policies/customs were moving forces behind the denial of equal protection.

120. Defendants' actions deny Plaintiff and A.E. the equal protection of the laws in violation of the Fourteenth Amendment. Plaintiffs are entitled to declaratory and injunctive relief, and to damages as allowed by law.

**FIFTH CLAIM FOR RELIEF:**

**UNCONSTITUTIONAL CONDITIONS DOCTRINE**

121. Plaintiff realleges and incorporates paragraphs 1-120 as if fully set forth herein.

122. The government may not condition the receipt of a public benefit on the waiver of constitutional rights where such conditions are coercive or unrelated to the benefit's purpose. Perry v. Sindermann, 408 U.S. 593, 597 (1972) ("[E]ven though a person has no 'right' to a valuable governmental benefit… [the government] may not deny a benefit to a person on a basis that infringes his constitutionally protected interests."); Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595, 604 (2013) (government cannot force people to give up constitutional rights in exchange for a discretionary benefit).

123. Public education is a government benefit of "paramount importance" Plyler v. Doe, 457 U.S. 202, 221 (1982). and the State may not leverage access to it to compel surrender of Fourth and Fourteenth Amendment rights.

124. The Defendants' BYOD policy conditions a student's access to instruction on the family's agreement to:

a.  surrender a privately owned computer for domain enrollment

b.  accept deletion of all local files during enrollment

c.  submit to persistent device management and monitoring that follows the device into the home or else pay a $100 rental fee (subject to limited availability) or lose equal access to required digital instruction. See Exhibits B, G.

125.  These conditions are coercive (no meaningful opt-out with equal access), not narrowly tailored to any legitimate educational purpose (less-intrusive alternatives exist, including school-issued devices and network-level filtering), and pretextual to the extent Defendants invoke cost savings rather than necessity. See Exhibits A–C, G;

126.  By forcing families to choose between exercising constitutional rights and securing full access to public education, Defendants impose an unconstitutional condition. The State may not accomplish indirectly—through conditional benefits—what it cannot do directly. Perry, 408 U.S. at 597; Koontz, 570 U.S. at 604.

127.  Defendants' actions violate the Unconstitutional Conditions doctrine under the Fourteenth Amendment. Plaintiffs are entitled to declaratory and injunctive relief, and to damages as allowed by law.

**SIXTH CLAIM FOR RELIEF:**

**42 U.S.C. § 1983 – DEPRIVATION OF CONSTITUTIONAL RIGHTS OFFICIAL CAPACITY (PROSPECTIVE INJUNCTIVE & DECLARATORY RELIEF)**

128.  Plaintiff realleges and incorporates paragraphs 1-127 as if fully set forth herein.

129.  Defendants Tabatha Camacho (CSPES Principal), Dr. Mark Bedell (AACPS Superintendent), and Yilmaz Zayn Ak (CLF CEO), in their official capacities, act under color of state law and have ongoing authority to implement, enforce, suspend, or rescind the BYOD policy and related practices described above.

130.  Plaintiffs seek prospective injunctive and declaratory relief to halt ongoing violations of the Fourth and Fourteenth Amendments. To the extent any Defendant claims sovereign immunity (e.g., AACPS as an arm of the State), Plaintiffs proceed against appropriate officials for prospective relief under Ex parte Young, 209 U.S. 123 (1908).

131.  Defendants' ongoing enforcement of the BYOD policy causes continuing constitutional injury. Prospective relief directed to these officials can redress that injury.

132.  Plaintiffs request an order that these officials:

    a.   cease requiring enrollment of family-owned devices in Google Admin/GoGuardian as a condition of access to instruction

    b.   provide a no-cost, non-surveillant access path (e.g., school-issued device or non-device-level controls)

    c.   purge any data taken from family-owned devices and bar further collection;

    d.   provide notice to families and written opt-in protocols limited to school-owned devices

    e.   implement oversight and training to ensure compliance.

**SEVENTH CLAIM FOR RELIEF:**

**42 U.S.C. § 1983 – DEPRIVATION OF CONSTITUTIONAL RIGHTS INDIVIDUAL CAPACITY (DAMAGES) — Yilmaz Zayn Ak and Dr. Mark Bedell**

133.  Plaintiff realleges and incorporates paragraphs 1-132 as if fully set forth herein.

134.  Defendant Yilmaz Zayn Ak, CLF's CEO, acted under color of state law and personally authored, approved, and directed the CLF-wide BYOD regime. The policy bears his approval and he instructed principals to implement it beginning in 2025–26. See Exhibit G.

135.  As CLF's chief executive, Ak had a duty to ensure that policies he issued and enforced complied with the Constitution. Principals and IT staff reasonably relied on his directives and the CLF-branded policy documents "approved by the CEO," implementing them in good-faith compliance with chain-of-command. See Exhibit G.

136.  Ak had actual or constructive knowledge that his policy posed a pervasive and unreasonable risk of constitutional injury:

    a.   it required domain control and GoGuardian monitoring of family-owned devices used in the home, with automatic deletion of local files (Exhibits B, G)

    b.   AACPS had no districtwide BYOD mandate for non-charter students (Exhibit C)

137.  On July 22, 2025, Principal Camacho and AACPS counsel received written notice identifying the policy's constitutional defects (Exhibit D). After that notice, CLF schools proceeded with configuration appointments (Exhibit E). As CLF's CEO responsible for the CLF-wide rollout he

authored and approved (Exhibit G), Ak had a duty to review and correct the policy and had constructive notice through his subordinate administrator and the ongoing implementation.

138.  Ak's response was so inadequate as to show deliberate indifference or tacit authorization: he did not suspend the policy, did not provide an opt-out with equal access, did not add pre-deprivation process or data-protection steps, and allowed implementation to continue after his organization had been put on notice. See Exhibits B, D, E, G.

139.  There is an affirmative causal link between Ak's actions and Plaintiffs' injuries. By drafting, approving, and ordering CLF-wide implementation, Ak set in motion the configuration and enforcement that caused the seizures, searches, and unequal access alleged.

140.  On July 22, 2025, Plaintiff provided written notice to the AACPS Office of General Counsel of the BYOD policy's constitutional defects. See Exhibit D.

141.  The Office of General Counsel advises and routinely briefs the Superintendent on significant legal risk and charter-oversight matters. Upon information and belief, Dr. Bedell received, or was briefed on, Plaintiff's July 22, 2025 notice before AACPS continued implementation on August 8–10, 2025 (Exhibit E).

142.  Dr. Bedell possessed authority to intervene or halt implementation pending review but failed to act. Configuration appointments and device enrollments proceeded on and after August 8–10, 2025. See Exhibit E.

143.  Dr. Bedell's inaction, in the face of known constitutional risk, constitutes deliberate indifference and/or tacit authorization and was an affirmative cause of Plaintiffs' injuries.

144.  Plaintiff seeks compensatory damages against Yilmaz Zayn Ak and Dr. Mark Bedell in their individual capacities, punitive damages as permitted by law, nominal damages, and such other relief as the Court deems just.

**EIGHTH CLAIM FOR RELIEF:**

**VIOLATION OF MARYLAND EDUCATION CODE § 7-308**

145.  Plaintiff realleges and incorporates paragraphs 1-144 as if fully set forth herein.

146.  Maryland Education Code Annotated § 7-308 strictly limits the circumstances, personnel, and

locations in which public school officials may conduct searches. The statute:

    a.  Restricts who may search (§ 7-308(b), (c), (f))

    b.  Requires "reasonable belief" before searching a student (§ 7-308(c))

    c.  Mandates the presence of a third-party witness (§ 7-308(e))

    d.  Limits searches to school property or school-sponsored trips (§ 7-308(g))

    e.  Applies primarily to school property such as lockers (§ 7-308(b)), not personal family

        property.

The BYOD policy violates every requirement of Maryland law.

147.  The CLF/CSPES BYOD regime effects searches of student devices and data in ways that

conflict with § 7-308:

    a.  Unauthorized searchers. "Configuration" is performed by IT staff, and ongoing

        monitoring is performed by teachers and automated systems, not by the limited personnel

        contemplated by § 7-308. There is no written designation and training as the statute

        requires for expanding search authority.

    b.  No reasonable belief. Device access, inspection, and monitoring are imposed on every

        student without individualized reasonable belief of wrongdoing, contrary to § 7-308's

        standard for student searches.

    c.  No third-party witness. Device "configuration" sessions occur without a required third-

        party witness, and remote monitoring runs without any contemporaneous human presence

        or oversight, contrary to § 7-308's witness requirement for student searches.

    d.  Off-campus reach. The policy monitors students at home and off campus, exceeding § 7-

        308's geographic limits (school premises or school-sponsored trips).

    e.  Beyond school property. § 7-308 authorizes searches of students and school property

        (e.g., lockers) with specified procedures; it does not authorize commandeering and

        continuous monitoring of family-owned computers.

      f.   Notice mismatch. Locker searches require prior announcement/publication of the school's authority. The far more intrusive, comprehensive device surveillance regime lacks comparable published, specific notice and safeguards.

148.  The State Board's implementing regulations for § 7-308 recognize limited, supervised, on-premises searches with reasonable belief and a witness. They do not authorize continuous, AI-assisted, off-campus surveillance of privately owned devices.

149.  Maryland law represents the state's careful balance between school safety and student privacy. The BYOD policy obliterates this balance by implementing unlimited, suspicionless, continuous searches by unauthorized personnel without any oversight—precisely what the Maryland legislature prohibited.

150.  Plaintiffs seek a declaration that the BYOD regime, as applied to family-owned devices, violates Md. Code, Educ. § 7-308, and an injunction prohibiting Defendants from requiring enrollment, configuration, or monitoring of privately owned devices under color of that statute. Plaintiffs also seek any further relief necessary to bring Defendants' practices into compliance with § 7-308.

## NINTH CLAIM FOR RELIEF

## 42 U.S.C. § 1983 — Municipal Liability (Monell) — CLF (Damages and Equitable Relief)

151.  Plaintiff realleges and incorporates paragraphs 1-150 as if fully set forth herein.

152.  Chesapeake Lighthouse Foundation (CLF) is a private nonprofit that acts under color of state law in operating public charter schools; it is a §1983 "person."

153.  Plaintiffs' injuries were caused by CLF's official policy:

      a.   On Feb. 15, 2024, the CLF Board adopted BYOD (minutes: purpose was to "make the principal's job easier," with no ESSER/Blueprint rationale). See Exhibit A.

      b.   CLF issued a CLF-wide regulation/FAQ ("CLF Public Charter Schools Electronic Device and BYOD Policy") requiring a parent-provided Chromebook, Google Admin

enrollment, GoGuardian, a signed Device Permission Form, and offering a $100 rental; it bears CEO approval. See Exhibit G.

    c.   The CEO directed implementation for 2025–26 and instructed principals to enforce the policy.

154.  The CLF Board is CLF's final policymaker for its schools. Alternatively, the Board delegated scope/timing to the CEO and ratified the CLF-wide rollout with knowledge of its terms. The policy and rollout were the moving force behind Plaintiffs' Fourth and Fourteenth Amendment injuries.

155.  CLF failed to train or supervise principals/IT staff on constitutional limits of device searches, home monitoring, consent, and data deletion, despite obvious risks and available less-intrusive alternatives. This deliberate indifference was a proximate cause of the violations.

156.  Plaintiffs seek damages (compensatory and, as appropriate, punitive against individuals) and declaratory/injunctive relief against CLF consistent with the Prayer.

**TENTH CLAIM FOR RELIEF:**

**Maryland Declaration of Rights, Article 24 (Due Process)**

157.  Plaintiff realleges and incorporates paragraphs 1-156 as if fully set forth herein.

158.  For the reasons set forth in Counts II and III, Defendants' conduct violates Article 24.

159.  Plaintiff seeks declaratory and injunctive relief, and any other relief allowed by state law.

**ELEVENTH CLAIM FOR RELIEF:**

**Maryland Declaration of Rights, Article 26 (Search and Seizure)**

160.  Plaintiff realleges and incorporates paragraphs 1-159 as if fully set forth herein.

161.  For the reasons set forth in Count I, Defendants' conduct violates Article 26.

162.  Plaintiff seeks declaratory and injunctive relief, and any other relief allowed by state law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff David Escobar Jr. respectfully requests that this Court immediately:

    A.  Declarations

A1. Declare that Defendants' BYOD policy, as applied at Chesapeake Science Point Elementary School and any other CLF-operated public charter school, violates the Fourth and Fourteenth Amendments.

A2. Declare that the policy violates Article 24 of the Maryland Declaration of Rights.

A3. Declare that the policy, as applied to family-owned devices, violates Md. Code, Educ. § 7-308.

A4. Declare that conditioning access to public education on enrollment of a family-owned device into remote management and monitoring is an unconstitutional condition.

B. Prohibitory Injunction (Official Capacities / Entities)

B1. Enjoin Defendants Tabatha Camacho (CSPES Principal), Dr. Mark Bedell (AACPS Superintendent), and Yilmaz Zayn Ak (CLF CEO), in their official capacities, Board of Education of Anne Arundel County, and CLF and the CLF Board of Directors, from enforcing any policy at any CLF-operated school that:

(i) conditions access to instruction, assessments, or required platforms on submission of a family-owned device for configuration or monitoring;

(ii) requires installation of monitoring/management software (including domain enrollment, Google Admin, GoGuardian) on family-owned devices;

(iii) mandates deletion of local files from family-owned devices; or

(iv) penalizes or excludes students for declining to submit family-owned devices for configuration or monitoring.

B2. To the extent the AACPS Board asserts sovereign immunity, the injunction shall run to the appropriate officials under Ex parte Young.

C. Affirmative Injunction (Remedial Steps)
Order Defendants to:

C1. Suspend all configuration activities under the CSPES BYOD policy (and any substantially similar AACPS/CLF policy) and cancel pending appointments unless a family affirmatively re-consents after receiving the notices in C6–C8.

C2. Provide a no-cost, non-surveillant access path to instruction for all students, which may include:

    (a) school-issued devices; and/or

    (b) network-level filtering for unmanaged personal devices without device-level control; and/or

    (c) lab access or paper-based alternatives where needed.

C3. Remove all monitoring/management software from any previously configured family-owned devices upon request and return control (unenroll) without data loss.

C4. Purge any data collected from family-owned devices and direct all vendors (including Google/GoGuardian) to delete such data; provide written vendor confirmations within 30 days.

C5. Prohibit out-of-school monitoring and device-level control on any device not owned by the school.

C6. Issue written notice to all CLF families that enrollment of a family-owned device is not required to access public education and that no adverse action will be taken for declining.

C7. Adopt and publish a revised technology policy limiting device-level management to school-owned devices and specifying hours, scope, retention, and audit limits.

C8. Conduct staff training and file a compliance report within 45 days, with a 90-day follow-up report.

D. Damages

D1. Award compensatory damages against Chesapeake Lighthouse Foundation under 42 U.S.C. § 1983 (Monell), and against Yilmaz Zayn Ak and Dr. Mark Bedell, in their individual capacities, in an amount to be determined at trial, jointly and severally.

D2. Award punitive damages against Yilmaz Zayn Ak and Dr. Mark Bedell, in their individual capacities, as permitted by law.

D3. Award nominal damages against Chesapeake Lighthouse Foundation, and against the individual-capacity defendants, as appropriate.

E.   Fees and Costs

E1. Award reasonable costs, and attorneys' fees under 42 U.S.C. § 1988 if Plaintiff is represented by counsel.

F.   State-Law Relief

F1. On the state-law claim(s), award appropriate declaratory/injunctive relief and, to the extent permitted by Md. Code, State Gov't § 12-104, any allowable damages.

G.   Preliminary Relief and Bond

G1. Schedule a hearing on preliminary injunctive relief at the Court's earliest practicable date.

G2. Waive or set a nominal Rule 65(c) bond, given the public-interest nature of this case and the absence of monetary risk to Defendants.

H.   Retention of Jurisdiction

H1. Retain jurisdiction to enforce the injunctions, monitor compliance, and resolve any disputes concerning implementation.

I.   Further Relief

I1. Grant any other and further relief the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

David Escobar Jr.
1628 Severn Run Ct.
Severn, MD 21144
Cell: (240) 429-2465
david.j.escobar2@gmail.com
Pro Se Plaintiff

**VERIFICATION**

I, David Escobar Jr., declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that:

1.  I am the Plaintiff in this action and the parent of A.E., a minor child who is enrolled at Chesapeake Science Point Elementary School for the 2025-2026 school year.

2.  I have personal knowledge of the facts in this Complaint, except those stated upon information and belief, and if called as a witness, I could and would testify competently to these facts.

3.  The factual allegations in this Complaint concerning the BYOD policy, its requirements, the school's communications to parents, and the impact on my family are true and correct to the best of my knowledge.

4.  I received the June 3, 2025 email from the school announcing the BYOD policy and have reviewed all accompanying documentation. (Exhibits A and B).

5.  On July 22, 2025, The Civic Ledger, a civic journalism initiative I founded, sent communications to Principal Camacho and AACPS legal counsel expressing constitutional concerns about the policy. No substantive response was received. (Exhibit D).

6.  I have reviewed the August 15, 2025 configuration appointment schedule showing active implementation of the policy. (Exhibit C).

7.  My daughter will be required to have a configured device to participate fully in her education, and without court intervention, we will suffer the constitutional violations described in this Complaint.

8.  The contents of this Complaint are true and correct to the best of my knowledge, information, and belief.

9.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 3rd day of September, 2025, at Severn, Maryland.

David Escobar

1