IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DAVID ESCOBAR JR.** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No.: 1:25-cv-02645-ABA |
| v. ) | |
| ) | |
| **TABATHA CAMACHO,** *et al.* ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants Yilmaz Zayn Ak, Tabatha Camacho, Dr. Mark Bedell, Board of Education of Anne Arundel County, Chesapeake Lighthouse Foundation, and the Chesapeake Lighthouse Foundation Board of Directors (collectively, the "Defendants"), by counsel, pursuant to FED. R. CIV. P. 12(b)(1) and (6), hereby submit the following Memorandum of Points and Authorities in Support of their Motion to Dismiss Plaintiff David Escobar Jr.'s ("Plaintiff" or "Escobar") Amended Complaint ("Complaint") in its entirety with prejudice for the reasons set forth below.

I.     **INTRODUCTION**

Escobar brings this action on behalf of himself and his minor child, A.E., challenging Chesapeake Science Point Elementary School's ("CSPES") Bring Your Own Device ("BYOD") policy. As explained below, the Amended Complaint should be dismissed in its entirety. First, Escobar lacks Article III standing because neither he nor his child suffered any actual or imminent injury, and the policy he challenges is voluntary and provides an option for free school-issued devices. Second, even if standing existed, the case is moot because CSPES subsequently clarified its BYOD policy to confirm that participation is encouraged but not mandatory and that school-

1

issued devices remain available at no cost. Third, Escobar's federal and state constitutional claims are barred by the doctrines of sovereign and qualified immunity, as the Defendants are state actors performing discretionary functions within the scope of their official duties. Accordingly, the Court should dismiss the Amended Complaint in its entirety with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

## II.   FACTUAL BACKGROUND

Escobar is the parent of A.E., a minor student enrolled at CSPES. Compl., at ¶ 1. Escobar seeks to bring this lawsuit on behalf of himself and his minor daughter for purposes of challenging CSPES's BYOD policy, recently implemented for the 2025-2026 school year. *See generally* Compl.

Escobar alleges that Defendant Chesapeake Lighthouse Foundation ("CLF") "is a Maryland non-profit corporation and public charter school operator acting under color of state law" and is a part of the Anne Arundel County public school system. *Id.* at ¶¶ 6, 11. Escobar alleges that "CLF is responsible for the management and operation of [CSPES] under a charter authorized by the Anne Arundel County Public Schools ("AACPS") Board of Education." *Id.* Further, Escobar alleges that "CLF implements and enforces the policies adopted by its governing board, [the Chesapeake Lighthouse Foundation Board of Directors,] including the [BYOD] policy challenged in this action." *Id.* at ¶ 7.

The Complaint states that as part of the BYOD policy, "[o]n June 3, 2025, [CSPES] announced that it would no longer issue school-owned devices." *See* Compl., at p. 2. "Instead, families must supply personal laptops and submit them for mandatory 'configuration' that deletes all local files and installs surveillance software." *Id.* Escobar maintains that [t]his policy marks a dramatic shift[]" because "[f]or years, CSPES provided Chromebooks through its appropriated

funding through [AACPS]." *Id*. Escobar alleges that "[a]s part of this shift, the configuration process erases all personal content and installs GoGuardian software, giving school officials real-time access to student screens, browsing history, documents, and online activity—both at home and at school." *Id*. Escobar claims that the policy is "not optional" despite acknowledging the option for the issuance of rental devices from CSPES and maintains that "[f]amilies who refuse configuration are effectively denied access to education[]" because they cannot "log into learning platforms, complete assignments, or take digital assessments." *Id*.

Escobar alleges that Defendant Yilmaz Zayn Ak ("Ak"), the CEO of CLF, approved the BYOD policy (*id*. at p. 5), and that "Defendant Principal Tabatha Camacho is responsible for enforcing the BYOD policy at CSPES." *Id*. at ¶ 25. Further, Escobar makes the highly speculative allegation that on or around July 22, 2025, Defendant Dr. Mark Bedell ("Bedell"), Superintendent of AACPS, was advised by AACPS Office of General Counsel that Escobar allegedly emailed a notice to the Office of General Counsel "identifying the BYOD policy's constitutional defects and requesting immediate suspension of configuration." *Id*. at ¶¶ 29-30. Escobar alleges that despite the notice to Bedell, Bedell and AACPS "took no action" and "[c]onfiguration appointments and device enrollments proceeded[,]" allegedly resulting in injury to Escobar and his child. *Id*. at ¶¶ 31-32.

The Complaint alleges that "[t]o comply with the BYOD policy, A.E. will use a personal laptop owned and maintained by her parent, Mr. David Escobar Jr." *Id*. at ¶ 37. Further, the Complaint states that the device A.E. will be using is "not school-issued property; it is private property used for household and personal purposes[]" and that "CSPES has required that this privately owned computer be configured with persistent device-management tools and student-

3

surveillance software that grant the school ongoing access, control, and data-monitoring capabilities." *Id*. Escobar alleges that this issue is ongoing. *See generally* Compl.

As a result, on September 3, 2025, Escobar filed the subject Amended Complaint against Defendants. The Complaint contains eleven counts: (I) unreasonable search and seizure in violation of the 4th Amendment against all Defendants; (II) deprivation of parents' fundamental right to direct the upbringing and education of their children in violation of 14th Amendment substantive due process against all Defendants; (III) deprivation of private property interests in violation of 14th Amendment procedural due process against all Defendants; (IV) violation of 14th Amendment Equal Protection Clause against all Defendants; (V) violation of Unconstitutional Conditions Doctrine against all Defendants; (VI) request for prospective injunctive and declaratory relief against Defendants Tabatha Camacho, Dr. Mark Bedell, and Yilmaz Zayn Ak in their official capacities; (VII) request for compensatory and punitive damages against Defendants Yilmaz Zayn Ak and Dr. Mark Bedell in their individual capacities; (VIII) violation of Maryland Education Code §7-308 against all Defendants; (IX) request for compensatory and punitive damages against CLF; (X) violation of due process rights pursuant to Maryland Declaration of Rights, Article 24 against all Defendants; and finally, (XI) unreasonable search and seizure in violation of Maryland Declaration of Rights, Article 26 against all Defendants.

Escobar's Amended Complaint should be subject to dismissal in its entirety as discussed *infra*.

### III. LEGAL STANDARD

#### A. FED. R. CIV. P. 12(b)(1)

"A motion to dismiss under Rule 12(b)(1) should be granted 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of

4

law.'" *Hammons v. University of Maryland Medical System Corporation*, 551 F.Supp.3d 567, 578 (D.Md. 2021) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). "In the context of such a motion, courts should 'regard the pleadings as mere evidence on the issue,' and 'may consider evidence outside the pleadings without converting the proceedings to one for summary judgment.'" *Id.* (quoting *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). "As a general rule, the plaintiff bears the burden of proving that subject matter jurisdiction exists." *Id*. Rule 12(b)(1) governs motions to dismiss for the doctrines of standing, mootness, and sovereign immunity. *See Hammons*, 551 F.Supp.3d at 578 (holding "that sovereign immunity … properly is assessed under Fed.R.Civ.P. 12(b)(1)."); *see also Estate of Jones v. Maryland Department of Public Safety*, No. 1:21-cv-01889-JRR, 2024 WL 493269, at *2 (Feb. 8, 2024) ("Rule 12(b)(1) also governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." (internal quotation omitted)).

  **B.**  **FED. R. CIV. P. 12(b)(6)**

FED. R. CIV. P. 12(b)(6) provides for dismissal where an action fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. To that end, "the court need not accept the [plaintiff's] legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States,* 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.,* 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.,* 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi,* 930 F.3d at 605 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.,* 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia,* 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied,* 566 U.S. 937 (2012).

## IV.    ARGUMENT

### A.    Escobar Lacks Article III Standing to Bring the Subject Lawsuit

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Id*. (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); *see also Summers v. Earth Island Institute*, 555 U.S. 488, 492-93 (2009); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper*, 568 U.S. at 408. Where a plaintiff does

not have standing, courts do not have jurisdiction to hear the dispute. *John and Jane Parents 1 v. Montgomery County Board of Education*, 78 F.4th 622, 636 (4th Cir. 2023).

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper*, 568 U.S. at 409 (quoting *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139,----,130 S.Ct. 2743, 2752, 177 L.Ed.2d 461 (2010)). "'Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending.'" *Id*. (quoting *Defenders of Wildlife*, 504 U.S. at 565, n.2 (internal quotation marks omitted)). Thus, "'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient.'" *Id*. (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (emphasis added; internal quotation marks omitted). "In other words, a plaintiff must have sufficient 'personal stake in the alleged dispute' <u>and</u> have a particularized injury that a court can remedy." *John and Jane Parents 1*, 78 F.4th at 628 (quoting *Raines*, 521 U.S. at 819 (internal quotation marks and citation omitted) (emphasis added)).

For example, in *John and Jane Parents 1*, parents of children attending a public school system in Maryland filed suit for purposes of challenging a school policy that permitted "school officials to develop gender support plans and then withhold information about a child's gender support plan from their parents." 78 F.4th at 626. The parents' basis for the lawsuit was that the policy "unconstitutionally usurp[ed] the parents' fundamental right to raise their children under the Fourteenth Amendment." *Id*. On appeal, the U.S. Court of Appeals for the Fourth Circuit vacated the U.S. District Court for the District of Maryland's order and remanded the case to be dismissed on the basis that the parents failed to "allege a current injury, a certainly impending

7

injury or a substantial risk of future injury[]" and as a result, failed to allege Article III standing. *Id*. at 636.

More specifically, the court reasoned that the parents failed to allege a current injury because none of them "alleged any of their children ha[d] gender support plans[]" or "that their children [] had any discussions with school officials about gender-identity or gender-transition issues." *Id*. at 629. "The closest the parents [came] to asserting a current injury [was] opining that [f]or all [they] [knew], some of their own children *could* [*have been*] a part of the 300 students with a gender support plan[,]" which the court found did not establish a current injury. *Id*. (internal quotations omitted). Next, the closest the parents came to alleging a "certainly impending injury or a substantial risk of future harm" from the policy was alleging that "[f]or all [they] [knew], their children might soon be subject to a gender support plan that is withheld from them." *Id*. at 630 (internal quotations omitted). The court stated, "[w]ithout more, any risk of future injury alleged by the parents is far more attenuated than what the Supreme Court has allowed.[]" and that "[t]he parents' claims [] depend on a speculative fear, the occurrence of which requires guesswork as to the actions of others." *Id*. at 630-31.

Like in *John and Jane Parent 1*, Escobar has failed to allege a current injury. As reflected in the Declaration of Dr. Tabatha Camacho, which is attached hereto as Exhibit 1,[1] CSPES provided Escobar's daughter A.E. with a school-issued Chromebook free of charge. *See also* Exhibit 2 (A.E. Device Use Agreement). The allegations in the Complaint that "[t]o comply with

---

[1] Under Fed. R. Civ. P. 12(b)(1), the Court may consider Dr. Camacho's Declaration and other evidence outside of the pleadings to resolve standing and mootness without converting the motion into a motion for summary judgment where "the jurisdictional facts are [not so] intertwined with the facts central to the merits of the dispute. *See Frankel v. United States*, 358 F.Supp. 3d 537, 540 (E.D.V.A. 2019); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Here, Dr. Camacho's Declaration, A.E.'s Device Use Agreement, and the updated BYOD Policy go directly to the issues of standing and mootness/whether there is a live controversy and <u>not</u> whether the challenged school policy is constitutional, which would be getting into the merits of the dispute.

the BYOD policy, A.E. will use a personal laptop owned and maintained by [Escobar]" (Compl., at ¶ 37) and that it "is not school-issued property; it is private property used for household and personal purposes[]" (*id.*) are factually incorrect. At no point in time has CSPES or any of the Defendants required A.E. to use or configure a personal device. Exs. 1 and 2. Additionally, Escobar has failed to allege a certainly impending injury or a substantial risk of future harm. Like in *John and Jane Parent* 1, even if Escobar alleged in the Complaint that for all he knows, his child could be required to use a personal device at some point (he does not), this would be far too attenuated and based entirely on speculative fear on what school administrators might require in the future.

And as reflected by the updated BYOD policy implemented by CLF in October 2025, the policy now clearly states that while "[f]amilies are strongly encouraged to send a Chromebook for continuity between home and school; the school will provide a device for in-school use at no cost when needed." Exhibit 3 (emphasis added). Not only does this further show that there is no certainly impending injury or substantial risk of future harm, but it also demonstrates that any court intervention will not redress the alleged harm given that (1) A.E. is already using a school laptop free of charge and (2) the BYOD policy is not mandatory.[2] At bottom, Escobar and A.E. have no injury and as a result no standing to bring this lawsuit. The Complaint must therefore be dismissed in its entirety with prejudice.

B.     **Escobar's Case is Moot.**

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for Article III purposes—'when the issues presented are no longer 'live' or the parties lack a legally cognizable

---

[2] It is important to note that the BYOD policy never was mandatory. As reflected in the original BYOD policy attached to the Amended Complaint as Exhibit A, there was always an option to rent a school-issued device. However, the updated policy further clarifies that if a family chooses to opt out of using a personal device, there is an option where the school will provide a device at no cost. Ex. 3.

9

interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 88 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*) (some internal quotation marks omitted)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id*. (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)).

The Supreme Court has "recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Id*. (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982)). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id*. "Given this concern, [the Supreme Court's] cases have explained that 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id*. (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

For example, in *Caroline County Branch of NAACP v. Town of Federalsburg, Maryland*, the plaintiffs, "[a] coalition of individual Black voters and two civil rights organizations" filed a lawsuit against the Town of Federalsburg, Maryland, alleging violations of the Voting Rights Act of 1965 ("VRA") pertaining to the town's "staggered-term election system." 702 F.Supp.3d 410, 411 (D.Md. 2023). Prior to and during the litigation, "the Town took steps to replace its election system with one that would assure greater electoral opportunity for Black Federalsburg residents." *Id*. An election was then held with "the new district-based system" and "Black Federalsburg residents won seats on the Town Council for the first time in the Town's 200-year history." *Id*. Despite the positive election outcome, the plaintiffs pushed forward with the lawsuit on the basis

that "the Town's prior at-large election system violated the VRA" and asked for nominal damages. *Id*. The court found the case moot because the changes to the prior electoral system "eliminated the chief offending features of the Town's challenged system, and gave the Plaintiffs precisely what they sought in their Complaint." *Id*. at 415 (internal citations and quotations omitted).

The court further stated, "Plaintiffs' renewed request for a judgment on the Town's past election practices thus seeks 'an advisory opinion as to the legal status of an effectively defunct electoral system.'" *Id*. (quoting *Holloway v. City of Va. Beach*, 42 F.4th 266, 275 (4th Cir. 2022)). "Under well-established principles of justiciability, the Court has no power to render such an opinion and must dismiss this case as moot." *Id*.

Here, there never was an actual controversy with Escobar or his child's particular legal rights because (1) the BYOD policy was never mandatory (*see* Compl., at Ex. A and Exs. 1-3) and (2) Escobar never provided a personal device or had a personal device configured by CSPES as CSPES provided A.E. with a Chromebook for use free of charge (*see* Ex. 1-2). The issues raised in the Complaint were never issues as to Escobar or A.E. and therefore the case is moot. At bottom, Escobar is using the federal court system to seek an advisory opinion from the Court regarding a school policy that has not personally affected him or his child. Escobar's Complaint is moot and must be dismissed in its entirety as to all Defendants.

## C. Escobar's Claims are Barred by the Doctrines of Sovereign and Qualified Immunity.

### 1. Sovereign Immunity

Pursuant to the Eleventh Amendment of the U.S. Constitution, "[s]tate agencies and state instrumentalities are entitled to sovereign immunity from suits brought by individuals in federal court, unless the suit is brought pursuant to a statute passed by Congress containing a valid abrogation of sovereign immunity." *Lewis v. Board of Educ. Of Talbot County*, 262 F.Supp.2d

608, 612 (D.Md. 2003); *Quern v. Jordan*, 440 U.S. 332, 341 (1979) (confirming § 1983 contains no valid abrogation of Eleventh Amendment immunity). "This immunity applies to all forms of relief, legal and equitable, directly against the state or its instrumentalities." *Id*. "Similarly, the law is clear that individuals sued in their official capacity as state agents cannot be held liable for damages or retrospective injunctive relief." *Id*. "They may, however, be sued for prospective injunctive relief to end violations of federal law and remedy the situation for the future." *Id*. "Finally, individuals sued in their personal capacities under § 1983 [], are not immune from suit in federal court even if performing acts within their authority and necessary for fulfilling governmental responsibilities." *Id*.[3]

Notably, "[t]he lower federal courts of Maryland have consistently held in published decisions … that the school boards of Maryland are entitled to sovereign immunity." *Id.* at 613 (citing *Adas v. Calvert County Pub. Sch.*, 201 F.Supp.2d 516, 521 (D.Md. 2002); *Biggs v. Bd. Of Educ. of Cecil County*, 229 F.Supp.2d 437, 444 (D.Md. 2002); *Jones v. Frederick County Bd of Educ.*, 689 F.Supp. 535, 538 (D.Md. 1988)). Further, "Maryland law, through statute and judicial opinion, treats the county school boards as agents of the state." *Id.* at 614; *Board of Educ. of Prince George's County v. Prince George's County Educators' Ass'n*, 309 Md. 85, 522 A.2d 931, 936 n. 3 (1987) ("County boards of education are, of course, state agencies and not agencies of the county government."); *Montgomery County Educ. Ass'n v. Board of Educ. of Montgomery County*, 311 Md. 303, 534 A.2d 980, 987 (1987) (recognizing the local boards as state agencies). In recent

---

[3] State sovereign immunity similarly "bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it." *Heward v. Board of Education of Anne Arundel County*, No. 1:23-cv-00195-ELH, 2023 WL 6381498, at *24-25 (Sept. 29, 2023) (internal quotations omitted). "[T]he principles of Eleventh Amendment immunity and State sovereign immunity are often addressed collectively." *Id.*

years, "courts have continued to conclude, almost routinely, that county school boards in Maryland are State agencies." *Heward*, No. 1:23-cv-00195-ELH, 2023 WL 6381498, at *29. [4] Defendant Board of Education of Anne Arundel County is therefore a state agency.

Additionally, Escobar concedes in the Complaint that "CLF acts under color of state law as a de facto public institution by administering and operating public charter schools under authority delegated by county boards of education" across the State of Maryland. Compl., at ¶ 11. Further, Escobar's Complaint states, "[c]harter schools are part of the public school system." *Id.* (citing Md. Code, Educ. §§ 9-101, 9-102). CLF's Board of Directors "acts under color of state law as the final policymaking authority for the schools within CLF's charter system[]" and "[i]ts decisions on operations, policies, and discipline carry the same force as those of county boards of education." *Id.* at ¶ 12. Like the Board of Education of Anne Arundel County, Defendant Chesapeake Board of Directors is effectively a state agency. Individual Defendants Ak, Camacho, and Bedell, who Escobar is suing in their respective official capacities, are state agents and, pursuant to the doctrine of sovereign immunity, cannot be held liable for damages or retrospective injunctive relief, as explained above. For these reasons, Counts I, II, III, IV, V, VIII, IX, X, and XI must be dismissed as to Defendants Chesapeake Lighthouse Foundation, Chesapeake Board of Directors, Board of Education of Anne Arundel County, Yilmaz Zayn Ak in his official capacity, Tabatha Camacho in her official capacity, and Dr. Mark Bedell in his official capacity.

### 2. Qualified Immunity

"The qualified immunity rule seeks a proper balance between two competing interests." *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017). "On one hand, damages suits 'may offer the only

---

[4] Maryland courts have held that a county school board is not an extension of the State specifically in matters having to do with structure, budget, and procurement law. *Heward*, No. 1:23-cv-00195-ELH, 2023 WL 6381498, at *28.

realistic avenue for vindication of constitutional guarantees.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). "'On the other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 38 (1987)). "As one means to accommodate these two objectives, the [Supreme] Court has held that Government officials are entitled to qualified immunity with respect to 'discretionary functions' performed in their official capacities." *Id.* "The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

"Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts." *Id*. (quoting *Harlow, supra*, at 819). "And reasonableness of official action, in turn, must be 'assessed in light of the legal rules that were clearly established at the time [the action] was taken.'" *Id.* (quoting *Anderson, supra*, at 639 (internal quotation marks omitted)). For example, the Fourth Amendment "forbids unreasonable searches and seizures, yet it may be difficult for an officer to know whether a search or seizure will be deemed unreasonable given the precise situation encountered." *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 205 (2001) ("It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.")). "For this reason, [t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id*. (internal quotations omitted).

The Supreme Court has held that "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 152 (quoting *Malley v. Briggs*, 475

U.S. 335, 341 (1986)). For example, in the context of whether a police officer's actions constituted an unlawful search and seizure as explained above, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he confronted.'" *Id*. (quoting *Saucier, supra*, at 202). "If so, then the defendant officer must have been either incompetent or else a knowing violator of the law, and thus not entitled to qualified immunity." *Id*. "if not, however—i.e., if a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Id*.

Here, the Complaint fails to sufficiently allege that it was reasonably clear to individual Defendants Ak, Camacho, and Bedell, all acting in their official capacities for their respective state agent employers, that the implementation of the non-mandatory BYOD policy for the 2025-2026 school year at CSPES could be deemed unlawful. As reflected in the BYOD Frequently Asked Questions document attached to the Complaint as <u>Exhibit G</u>, the 2025-2026 school year was the first time CSPES sought to implement the BYOD program due to a lapse in funding, so it is not as if Defendants were privy to past constitutional challenges/violations to the specific program and opted to implement the program anyway. Further, the alleged "notice" that Escobar provided to Defendant Camacho and legal counsel for Anne Arundel County Public Schools on July 22, 2025 (Compl., at ¶ 64), came from a parent of a student (Escobar), which certainly is not verified confirmation of a legitimate constitutional violation. For these reasons, Counts I, II, III, IV, V, VIII, IX, X, and XI must be dismissed as to individual Defendants Ak, Camacho, and Bedell in their official capacities.

V. **CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendants Yilmaz Zayn Ak, Tabatha Camacho, Dr. Mark Bedell, Board of Education of Anne Arundel County, Chesapeake Lighthouse

Foundation, Chesapeake Lighthouse Foundation Board of Directors respectfully request that this Honorable Court grant its Motion to Dismiss Plaintiff's Amended Complaint in its entirety with prejudice and award any such further relief as the Court deems just and necessary.

Dated: November 5, 2025				Respectfully submitted,

					 /s/ *Jenna N. Van Middelem*
					Kelly M. Lippincott, Esq. (15931)
					Jenna N. Van Middelem, Esq. (30403)
					GORDON REES SCULLY MANSUKHANI, LLP
					277 S. Washington Street, Suite 550
					Alexandria, VA 22314
					202.399.1009
					202.800.2999 (Facsimile)
					klippincott@grsm.com
					jvanmiddelem@grsm.com
					*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on November 5, 2025 copies of the foregoing were e-filed and served on all parties via the Court's e-filing system.

*/s/ Jenna Van Middelem*
Jenna Van Middelem