IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DAVID ESCOBAR JR.**<br><br>**Plaintiff,**<br><br>v.<br><br>**TABATHA CAMACHO, et al.**<br><br>**Defendants.** | Case No.: 1:25-cv-02645-ABA |

**PLAINTIFFS'PLAINTIFF'S RESPONSE TO DEFENDANTS' OPPOSITION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff David Escobar, Jr. ("Plaintiff" or "Escobar") submits this response to Defendants' opposition for temporary restraining order ("TRO").

**I. INTRODUCTION**

Defendants' opposition to the TRO is a de facto general-warrant request. Their position would authorize blanket searches and control of students' privately owned devices—without probable cause and without particularity—exactly what the Fourth Amendment forbids. To do so, Defendants rely on a narrative that their own documents contradict and a theory that avoids the merits. Their declarant claims the Bring-Your-Own-Device ("BYOD") policy "was at no time" mandatory and that Plaintiff's child suffered no injury. But the school's family letter told parents that "all students will need to bring their own Chromebook" and that CSPES was "unable to provide school-issued devices." (Pl.'s Compl., Ex. B.)

Plaintiff's child, A.E., then went nearly a month without a device, was assigned "alternate" work, and—per her parent's declaration—was made to use a "restroom computer" to complete schoolwork. That is concrete, past deprivation traceable to the policy as written and implemented. (Escobar Decl. ¶¶ 4, 6)

## II. PLAINTIFF HAS STANDING AND HAS SUFFERED IRREPARABLE HARM

Defendants' standing argument misreads the record and John & Jane Parents 1 v. Montgomery County Board of Education, 78 F.4th 622 (4th Cir. 2023). That case turned on plaintiffs who failed to allege a current injury or that their own children were subject to the policy. Here, injury is both policy-level and concrete.

**Injury.** CSPES told families in writing that "all students will need to bring their own Chromebook" and that the school was "unable to provide school-issued devices." (Ex. B.) During this period, A.E. repeatedly asked when she would receive a laptop and explained there were electronic assignments she could not complete. She felt embarrassed when required to use the "restroom computer," a classroom device designated for timing restroom breaks, to complete her work. (Escobar Decl. ¶¶ 4, 6.) This shows stigmatic harm and educational deprivation—actual injury.

**Causation.** The deprivation flowed directly from the written mandate and the school's admitted lack of devices ("unable to provide school-issued devices"), resulting in denial of ordinary digital instruction and classroom segregation. (Ex. B; Escobar Decl. ¶¶ 4, 6.)

## III. DEFENDANTS' MOOTNESS ARGUMENT FAILS BECAUSE A LIVE CONTROVERSY REMAINS

At the TRO stage, Defendants bear a "formidable" burden to show it is "absolutely clear" the challenged conduct "could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167, 189–90 (2000). They cannot meet that burden for two reasons.

First, the supposed "updated" policy post-dates suit and, on this record, was not communicated to families through CSPES/CLF's usual channels. A post-suit, unpublicized change cannot moot a case at the TRO stage.

Plaintiff, as a parent of an enrolled student, was never notified of any change through the channels CSPES previously used to update parents. Plaintiff searched recent CSPES and CLF newsletters and websites and found nothing about a BYOD change. The only public reference to this "new" policy (Defendants' Ex. 3) appears to be an agenda line—"4.2 Approval of updated CLF BYOD Policy"—for an October 16, 2025 CLF Board meeting (Plaintiff Exhibit J). The approved minutes and the policy text are not published. An agenda line, without published minutes or text, is not public notice.

This failure to provide notice is dispositive for affected families. See Lewis v. Weinberger, 415 F. Supp. 652 (D.N.M. 1976) (unpublished policy change cannot bind persons adversely affected). Because Defendants never notified parents that the original, mandatory policy was rescinded, that policy remains operative as to Plaintiff. Learning of a "new" policy only through a litigation exhibit is not "actual and timely notice. Plaintiff, on belief and understanding, is likely the only parent aware of this "new" policy.

Defendants' claim that "there never was an actual controversy" because the original policy "was never mandatory" is flatly contradicted by Exhibit B—the official letter to CSPES families—which states that "all students will need to bring their own Chromebook" and that the school is "unable to provide school-issued devices." The original policy was a mandate; the controversy has been real from the start.

Second, Defendants' "exemption" rests on a revocable loaner. The "CSP Device Usage Agreement" makes clear the device is CSP property, that its use is a "privilege, not a right," and that it must be returned "[u]pon request of a school official." Discretionary, retractable relief does not extinguish a live dispute and can be withdrawn immediately after dismissal. (Escobar Decl. ¶ 7.)

The exemption, which Plaintiff accepted to maintain his and his daughter's constitutional rights, also failed in practice. A.E. had no computer for nearly the first month of school and was denied standard

digital curriculum, segregated to "alternate assignments," and subjected to shame and embarrassment. (Escobar Decl. ¶¶ 4, 6.) This is a cognizable injury.

This post-suit exemption and the unpublished "new" policy are classic voluntary cessation. See Laidlaw, 528 U.S. at 189; Already, LLC v. Nike, Inc., 568 U.S. 85, 91–93 (2013).

**Timeline:**

1. After service of the Complaint, Defendants offered a revocable, individual "exemption." (Aug. 20, 2025.)

2. Around Oct. 6, 2025, Defendants sought and received a 30-day extension.

3. On Oct. 16, 2025, they "approved" an unpublished policy update.

4. On information and belief, no publication or parent communication followed.

**IV. DEFENDANTS' OWN RECORDS SHOW AN EQUAL PROTECTION VIOLATION**

Defendants' own evidence, a Maryland Public Information Act (MPIA) response from AACPS General Counsel, establishes unequal treatment between similarly situated AACPS students. Traditional AACPS students have no BYOD policy; AACPS "does not configure or install programs on student-owned devices" and "does not monitor or collect data from student-owned devices." By contrast, AACPS students enrolled in charter schools like CSPES—including A.E.—were subjected to the opposite regime: mandatory BYOD, required configuration of private property, and monitoring/data collection.

This is a two-tiered system with no rational basis, violating the Fourteenth Amendment. Defendants' 13-page Opposition (Doc. 16) does not rebut the Equal Protection claim.

Even if the "new" policy were valid and published, it applies only to CLF/CSPES students and does not change the absence of BYOD for traditional AACPS students. Modifying one tier does not cure the disparity; the injury is ongoing.

## V. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

**Policy as written and enforced.** CSPES told families "all students will need to bring their own Chromebook" and that it was "unable to provide school-issued devices." (Ex. B.) A.E. then went nearly a month without a device, was assigned alternate work, and was made to use a "restroom computer." (Escobar Decl. ¶¶ 4, 6.) The record shows a mandate and concrete deprivation.

**Fourth Amendment (search/seizure).** The active policy requires deletion of personal data and installation of monitoring/configuration tools on family devices—an unreasonable search and seizure of digital effects. (Ex. B; Ex. E.)

**Unconstitutional conditions.** Access to public education was conditioned on surrendering constitutional rights in a privately owned device.

**Procedural Due Process (U.S. Const. amend. XIV; Md. Const. art. 24).** Permanent destruction or control over private data and devices without notice and a meaningful opportunity to object violates due process. (Ex. B.)

**Equal Protection.** AACPS's own MPIA response admits no BYOD, no configuration, and no monitoring for traditional AACPS students, while charter students (including A.E.) are subjected to the opposite regime. Defendants do not rebut this claim (Plaintiff Exhibit C).

**Maryland law.** The policy conflicts with Md. Educ. Code § 7-308 and Article 24.

**Notice and "policy update" defects.** A post-suit, unpublished change provides no lawful notice and does not cure past or ongoing violations.

**Knowledge and willfulness.** Defendants were warned on July 22, 2025 and proceeded anyway. (Ex. D.)

## VI. PLAINTIFF WILL SUFFER IRREPARABLE HARM

**Constitutional harm.** Loss of Fourth and Fourteenth Amendment rights is irreparable.

**Concrete educational harm.** A.E. missed nearly a month of normal digital instruction, was segregated to "alternate" work, and had to use a stigmatizing "restroom computer." (Escobar Decl. ¶¶ 4, 6.)

**Revocable "exemption" is illusory.** The loaner agreement deems device use a "privilege, not a right," and requires return "upon request of a school official." (Ex. 2; Escobar Decl. ¶ 7.) If revoked, Plaintiffs must submit a personal device for deletion of personal data and installation of monitoring software, or else A.E. will be denied ordinary access and stigmatized. (Ex. B; Ex. E.)

**Broader impact.** Nearly 100 configuration appointments were scheduled as of Aug. 15, 2025; CLF schools serve thousands of students. Each appointment risks data loss and surveillance. (Ex. E.)

**VII. PUBLIC INTEREST**

Protecting students' and families' constitutional rights, ensuring equal access to public education without coercion to alter private property, and requiring transparency and proper notice all serve the public interest. A late, unpublished "update" and a revocable, individual loaner do not.

**VIII. REQUESTED RELIEF**

Since filing, Defendants floated a post-suit "update" and offered a revocable, individual loaner. Neither cures the harm or the unequal treatment. The original letter told families "all students will need to bring their own Chromebook" and that the school was "unable to provide school-issued devices." (Ex. B.) A.E. then went nearly a month without a device, was assigned alternate work, and had to use a "restroom computer." (Escobar Decl. ¶¶ 4, 6.) The loaner is "a privilege, not a right," revocable "upon request of a school official." (Ex. 2; Escobar Decl. ¶ 7.) The "updated" policy has not been published or noticed to families. (Ex. 3.)

The relief below addresses those defects. It enjoins any mandatory BYOD; requires a single, uniform opt-in framework that applies equally to charter and traditional students; guarantees full access for non-participants; and bars device-level surveillance and data destruction.

Plaintiff respectfully requests that the Court enter a Temporary Restraining Order that:

**A. Enjoins any mandatory BYOD**

Enjoin Defendants from enforcing or implementing the CSPES/CLF BYOD policy—or any substantially similar policy—that conditions access to instruction, assessments, or curriculum on supplying, configuring, or surrendering a privately owned device.

**B. Requires a uniform, district-wide opt-in framework**

Order that any BYOD program within AACPS, including CLF/CSPES, must be opt-in with no adverse treatment for non-participants, and must apply on the same terms to charter and traditional AACPS students. Differential treatment of charter students is enjoined.

**C. Guarantees full access without surrendering a device**

Prohibit Defendants from denying or limiting any student's participation in coursework, platforms, or testing due to non-participation in BYOD.

**D. Bans device-level surveillance and data destruction**

Enjoin any requirement to (a) delete personal files from family devices; (b) install monitoring or management software on family devices; or (c) grant administrative control over family devices as a condition of participation.

**E. Ceases device-level surveillance of currently monitored private devices**

Enjoin Defendants from monitoring any activity on private devices and order removal of any existing monitoring software.

**F. Sets minimum privacy baselines for any opt-in use**

For students who affirmatively opt in with informed, written parental consent:

1. Any controls must be limited to the school-managed account or browser profile, not the device OS;

2. No 24/7 or off-campus monitoring of personal activity;

3. No access to, or collection of, non-school personal data;

4. Clear, revocable consent terms, provided in the family's primary language.

**G. Requires constitutionally adequate alternatives**

Order Defendants to provide and publicize equivalent, non-BYOD options, including one or more of:

1. School-issued devices available to all who request them;

2. Network-level filtering for unmanaged personal devices used on campus;

3. Paper or non-device workflows where needed.

**H. Makes school-issued access stable and non-retaliatory**

Any school-issued device provided to any student, including A.E., may not be revoked during this litigation absent documented cause unrelated to this case, with written notice to the parent and an opportunity to be heard. Retaliation against Plaintiff or A.E. is prohibited.

**I. Suspends configuration activities**

Immediately suspend all BYOD configuration appointments; cancel existing appointments; and cease scheduling new ones pending further order.

**J. Notice and publication**

Within 7 days, provide written notice to all affected families that:

1. The mandatory BYOD policy is enjoined;

2. Participation, if any, is opt-in and voluntary;

3. All non-BYOD alternatives in Section G are available now; and

4. Post the full, current BYOD terms and alternatives on CSPES, CLF, and AACPS websites and distribute via the same channels used for prior BYOD communications.

**K. Equal Protection certification**

Within 7 days, file an affidavit certifying district-wide compliance with a single, uniform BYOD standard and identifying all schools offering devices or alternatives under Section G.

**L. Evidence preservation**

Preserve all documents and ESI relating to BYOD conception, notice, approvals, implementation, device provisioning, exemptions/loaners, and monitoring.

**M. Bond**

Waive or set a nominal bond under Rule 65(c).

**IX. CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiff David Escobar, Jr. respectfully request that this Honorable Court approve Plaintiff's Motion for Temporary Restraining Order and award any such further relief as the Court deems just and necessary.

Dated: November 10, 2025

Respectfully submitted,

David Escobar, Jr.
1628 Severn Run Ct.
Severn, MD 21144
240-429-2465