IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DAVID ESCOBAR JR.**<br><br>Plaintiff,<br><br>v.<br><br>**TABATHA CAMACHO, et al.**<br><br>Defendants. | Case No.: 1:25-cv-02645-ABA |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (AND, IF CONVERTED, MOTION FOR SUMMARY JUDGMENT)**

I.   **INTRODUCTION**

Plaintiff David Escobar Jr. ("Plaintiff") submits this Opposition to Defendants' Motion to Dismiss his Amended Complaint. Because Defendants rely on declarations and exhibits outside the pleadings, and the Clerk has issued a Roseboro notice regarding "a motion to dismiss or for summary judgment," this Opposition is filed under Rules 12 and 56. Plaintiff also files the Declaration of David Escobar Jr. in Opposition to Defendant's Motion to Dismiss Amended Complaint ("Escobar Decl. #2") and Exhibit I: *Chesapeake Lighthouse Foundation Regular Board Meeting Agenda* . That declaration disputes the truth of key facts asserted in Defendants' papers, including:

1. whether the BYOD policy was mandatory as announced to parents;
2. whether CSPES was "unable to provide school-issued devices";
3. whether Plaintiff's child, A.E., went nearly a month without a device and was given stigmatizing "alternate" arrangements;
4. whether the loaner Chromebook is a stable right or a revocable privilege; and
5. whether the "updated" BYOD policy was ever communicated to parents or actually implemented.

On this record, Defendants are not entitled to dismissal or summary judgment on standing, mootness, sovereign immunity, or qualified immunity. The motion should be denied. In the alternative, to the extent the Court treats Defendants' submissions as a motion for summary judgment, Plaintiff requests denial or deferral under Rule 56(d) to allow limited discovery.

## II.   BACKGROUND AND PROCEDURAL POSTURE

Defendants move under Rules 12(b)(1) and 12(b)(6). They argue:

1. Plaintiff lacks standing because A.E. received a free Chromebook and the BYOD policy is voluntary;
2. the case is moot because CLF adopted an "updated" BYOD policy and A.E. now has a device; and
3. sovereign and qualified immunity bar most or all claims.

To support these points, Defendants submit:

- Defense Exhibit 1: Declaration of Principal Tabatha Camacho;
- Defense Exhibit 2: a "Chesapeake Science Point (K-12) Device Usage Agreement" for A.E.;
- Defense Exhibit 3: an "updated" CLF BYOD policy adopted in October 2025; and
- their Opposition to Plaintiff's Motion for Temporary Restraining Order, which rests on the same factual story.

The Clerk then issued a Roseboro notice stating that Defendants have filed "a motion to dismiss or for summary judgment" and warning that if Plaintiff does not respond with affidavits, declarations, and other evidence, the Court may enter judgment against him. The notice attaches excerpts of Rule 12(d) and Rule 56.

Rule 12(d) provides that when matters outside the pleadings are presented on a Rule 12(b)(6) or 12(c) motion and not excluded, "the motion must be treated as one for summary judgment under Rule 56," and all parties must be given a reasonable opportunity to present material pertinent to the motion.

Plaintiff now submits his declaration and exhibits to show that Defendants' new evidence is disputed and does not warrant dismissal or summary judgment.

### III. FACTS IN DISPUTE

The motion and TRO opposition present a simple story: BYOD was always optional; CSPES was always ready to provide free devices; and Plaintiff and A.E. never suffered any injury.

The Escobar Decl. #2 tell a different story.

1. **The family letter announced that "all students will need to bring their own Chromebook"**

The school's family letter (Plaintiff Exhibit B) told parents that for the 2025-26 year:

- "all students will need to bring their own Chromebook"; and
- CSPES was "unable to provide school-issued devices."

Plaintiff received that letter and understood it as a mandate that every student must bring a privately-owned Chromebook and that the school could not supply one. (Escobar Decl. #2 ¶¶ 3.) Defendants now describe the policy as "voluntary" and point to the existence of some rental option, but the plain language of the letter is mandatory.

Defendants' argument that the policy was "voluntary" misses the constitutional mark. The Unconstitutional Conditions Doctrine clearly establishes that the government cannot condition a public benefit (public education) on the waiver of a constitutional right (4th Amendment privacy of a personal device). Even if Defendants offered a loaner eventually, the initial demand—forcing parents to choose between surrendering privacy or losing educational access—was an unconstitutional condition.

2. **A.E. went nearly a month without a device and was segregated from normal instruction**

Dr. Camacho's declaration states that CSPES issued A.E. a school-owned Chromebook on September 4, 2025, "free of charge." It further asserts that "[a]t no time did CSPES require A.E. (or any other student) to use or configure a personal device as a condition of access".

In stark contrast, the Escobar Decl. #2 establishes that this delay caused actual harm:

- A.E. started the school year with no Chromebook and remained without one for nearly a month (approx. late August into mid-September);

- During this time, she repeatedly was unable to complete digital assignments because she lacked a laptop;

- She was given "alternate" work instead of the same digital instruction as other classmates; and

- She was required to use a single classroom "restroom computer" on more than one occasion (normally used to time restroom breaks) to complete digital assignments, which she found embarrassing and confusing. (Escobar Decl. #2 ¶¶ 4-6.)

During the critical first four weeks of school, while other students were accessing the standard curriculum, A.E. was forced to sit at a "restroom computer" or do makeshift paper assignments, creating a distinct educational deficit compared to her peers. These facts describe concrete educational loss and stigma, not a hypothetical or speculative fear.

3. **The "loaner" Chromebook timeline is factually impossible and the evidence is disputed**

Defendants rely on the declaration of Dr. Camacho and the "Device Usage Agreement" (Defense Exhibit 2) to argue that A.E. suffered no injury. However, the document itself and the timeline of its execution contradict Defendants' sworn declarations.

1. The Timeline is Impossible: Dr. Camacho declares (¶ 3) that CSPES issued A.E. a device on September 4, 2025. This is factually impossible.

    - School Start: The school year began on or about August 25, 2025.

    - Agreement Signed: Plaintiff did not sign the mandatory Device Usage Agreement until September 9, 2025—five days after Camacho claims the device was issued. (Escobar Decl. ¶ 4; Plaintiff's Ex. H).

    - Actual Receipt: A.E. did not physically receive the device until mid-September 2025, nearly four weeks after instruction began.

Defendants ask this Court to believe that the school issued government property to a minor student five days before securing the required liability waiver from her parent. This discrepancy confirms that A.E. was left without a device for nearly a month, substantiating Plaintiff's claim of concrete educational injury.

2. The Defense Exhibit is Degraded: Defendants' Exhibit 2 purports to be the "Device Usage Agreement." However, the second page of their submission is materially less legible than the first, obscuring key details. In contrast, Plaintiff's copy (Plaintiff's Ex. H) is clear on both pages and bears the specific notation "Sep 9, 2025." The fact that Defendants submitted a degraded copy that obscures the execution date—which contradicts their Dr. Camacho's sworn declaration—raises significant questions of evidentiary reliability that cannot be resolved on a motion to dismiss.

Plaintiff's execution of the agreement was not a voluntary act, but the result of coercion. After weeks of his child being segregated from normal instruction and with no other option available to secure her access

to the curriculum, Plaintiff signed the document on September 9, 2025, solely to mitigate the ongoing educational harm while this litigation proceeded. (Escobar Decl. #2 ¶ 4). Even under these coercive terms, the document makes clear that the device can be taken away "upon request" and that its use is a revocable "privilege," not a stable right.

### 3. The "updated" BYOD policy was not communicated to parents

Defendants rely on an "updated" BYOD policy adopted by CLF Board in October 2025, which states that families are "strongly encouraged" to send a Chromebook but that the school will provide one for in-school use "at no cost when needed."

The Escobar Declaration #2 states:

1. Plaintiff has never received any email, letter, or other notice from CSPES or CLF informing him that the earlier mandatory policy was rescinded or changed;
2. he searched recent CSPES and CLF newsletters, websites, and parent communication platforms and found no announcement of an updated policy or the policy itself;
3. the only public hint of such a policy is a single agenda line—"4.2 Approval of updated CLF BYOD Policy"—in CLF Board materials for October 16, 2025, with no published minutes or policy text (See Plaintiff Exhibit I).

For parents who never received notice, the original letter remains the operative communication: "all students will need to bring their own Chromebook" and the school is "unable to provide school-issued devices." (Escobar Decl. #2, ¶¶ 8-9., Plaintiff Exhibit I)

### 4. Equal protection: AACPS treats charter students differently from traditional students

In response to Plaintiff's Maryland Public Information Act request, AACPS General Counsel wrote that for traditional AACPS schools:

- AACPS "does not have a BYOD policy";

- AACPS does not configure or install programs on student-owned devices; and

- AACPS does not monitor or collect data from student-owned devices.

By contrast, AACPS charter students at CSPES are subjected to a mandatory BYOD policy, configuration, and monitoring regime. (Escobar Decl. ¶¶ 10; Plaintiff Exhibit C)

Defendants' 17-page Motion to Dismiss and 13-page TRO Opposition do not meaningfully address this two-tier structure.

Defendants may attempt to justify this disparity by citing funding differences or administrative distinctions between charter and traditional schools. However, while funding variances may be rational, the surrender of Fourth Amendment rights cannot be the "price" of attending a public charter school. Under the Unconstitutional Conditions Doctrine, the government cannot condition the benefit of charter education on the waiver of privacy rights that traditional students retain. Defendants' 17-page Motion to Dismiss fails to address why charter students are essentially second-class citizens regarding digital privacy.

## III. PLAINTIFF HAS ARTICLE III STANDING

The Motion argues that Plaintiff lacks standing because A.E. received a school-issued Chromebook and has never been required to use a personal device, and because any future harm is speculative.

This misstates both the law and the facts.

### A. Plaintiff alleges and supports a concrete, particularized injury

Standing requires an injury that is concrete, particularized, and actual or imminent, fairly traceable to the challenged action, and likely to be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Here, the injuries are both past and ongoing:

- CSPES told families in writing that all students must bring their own Chromebook and that the school was unable to provide school-issued devices.

- Because Plaintiff refused to subject his private laptop to school control and surveillance, A.E. went nearly a month without a device, missed normal digital lessons, and was segregated to "alternate" work and a "restroom computer."

- Plaintiff was placed in a forced choice: surrender a privately-owned device for configuration and monitoring, or accept ongoing educational disadvantage for his child. (Escobar Decl. ¶¶ 3-6.)

These injuries are concrete and personal. They are not hypothetical fears "that something might happen someday."

Defendants also rely on John and Jane Parents 1 v. Montgomery County Board of Education to argue lack of standing. But in that case the parents did not allege that their own children were subject to a gender-support plan, or even that school officials had met with their children about gender identity; their fears were entirely speculative. By contrast, Plaintiff alleges and now declares that his child personally experienced loss of access and stigma because of CSPES's BYOD rollout.

### B. The injuries are fairly traceable and redressable

The injuries are fairly traceable to Defendants' actions:

- the mandatory BYOD letter;
- CSPES's inability or refusal to provide timely school devices; and
- CLF's decision to require configuration and monitoring of private devices only for charter students.

A declaration that the BYOD policy and related practices are unlawful, and an injunction preventing Defendants from conditioning access to public education on surrender of private devices or imposing unequal treatment on charter students, would directly redress these harms. Monetary damages would also redress past harm.

Standing is satisfied.

## IV. THE CASE IS NOT MOOT

Defendants argue that this case is moot because CLF adopted an "updated" policy and A.E. now has a school-issued Chromebook. A case becomes moot only when the issues are no longer "live" or the parties lack a legally cognizable interest in the outcome. Already, LLC v. Nike, Inc., 568 U.S. 85, 88 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)). Voluntary cessation of challenged conduct does not moot a case unless it is "absolutely clear" the behavior cannot reasonably be expected to recur. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000).

That high bar is not met here.

### A. The loaner Chromebook is a revocable "privilege"

Plaintiff Exhibit H shows that A.E.'s Chromebook is not a permanent, guaranteed solution. It is "on loan," its use is a "privilege, not a right," and it must be returned "upon request of a school official."

Defendants thus retain full discretion to:

- revoke the device at any time—potentially immediately after this suit concludes if Defendants were to succeed on their Motion to Dismiss; and
- once again insist that A.E. bring a personal device or accept reduced access.

This discretionary, revocable arrangement is textbook voluntary cessation. It does not make it "absolutely clear" that the challenged behavior—conditioning full digital access on surrender of a private device—will not recur.

### B. The "updated" BYOD policy was not implemented or noticed

On this record, the "updated" policy is an internal document, not an operative public policy:

- there is no evidence CSPES sent the new language to families;

- the only public reference appears to be a single board-agenda line without published minutes or policy text; and
- the original letter to families has not been rescinded, corrected, or superseded in any communication to Plaintiff.

A secret, post-lawsuit policy change, unknown to parents, cannot moot a live controversy.

### C. Plaintiff's damages and declaratory claims remain live

Even if the Court were to find that injunctive relief is partially moot, Plaintiff's claims for damages and declaratory relief based on past harm remain live. A later change in policy does not erase the month A.E. spent without a device or the unequal treatment already suffered.

### V. SOVEREIGN IMMUNITY DOES NOT BAR ALL CLAIMS

The Motion argues that sovereign immunity bars Counts I, II, III, IV, V, VIII, IX, X, and XI as to the Board of Education of Anne Arundel County, CLF, the CLF Board of Directors, and the individual defendants in their official capacities.

This overreaches.

### A. Maryland's statutory waiver for local boards

Maryland courts treat local boards of education as state agencies for many purposes, but Maryland has also enacted a statutory waiver of immunity for such boards up to a monetary cap. See Md. Code Ann., Cts. & Jud. Proc. § 5-518(c) (establishing liability limit of $400,000). The Fourth Circuit has explicitly held that this statute waives Eleventh Amendment immunity for boards of education up to the statutory limit. See Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 249 (4th Cir. 2012) (holding that § 5-518 constitutes a waiver of Eleventh Amendment immunity); Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert, 409 F.3d 619, 623 (4th Cir. 2005).

While Lee-Thomas addressed the then-applicable $100,000 cap, § 5-518 has since been amended to increase the waiver to $400,000. Defendants' brief ignores this waiver entirely. Because the State has explicitly consented to be sued up to this limit, sovereign immunity does not require dismissal of claims against the Board.

### B. Prospective relief against state officials is allowed

Even where Eleventh Amendment immunity applies, it does not bar suits against state officials in their official capacities for prospective declaratory and injunctive relief to stop ongoing violations of federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Count VI seeks exactly that relief against Camacho, Bedell, and Ak in their official capacities. Those claims are not barred by sovereign immunity and should proceed.

### C. CLF and the CLF Board have not shown they are "arms of the state"

Defendants argue that because Plaintiff alleged CLF "acts under color of state law" and its Board is a final policymaker, they are "effectively" state agencies entitled to sovereign immunity. This conflates two distinct legal standards. Acting "under color of state law" for § 1983 liability is not the same as being an "arm of the State" for Eleventh Amendment immunity. See Peltier v. Charter Day School, Inc., 37 F.4th 104 (4th Cir. 2022) (en banc) (holding private charter school operator is a state actor for § 1983 purposes).

The Fourth Circuit applies the rigorous "arm of the state" test articulated in Gray v. Laws, which refined earlier standards to align with Supreme Court jurisprudence. See Gray v. Laws, 51 F.3d 426, 434 (4th Cir. 1995). Under Gray, the Court examines four factors: (1) whether the state treasury will be responsible for the judgment; (2) the entity's degree of operational autonomy; (3) whether the entity is involved with local versus statewide concerns; and (4) how the entity is treated under state law. Defendants have failed to demonstrate that CLF satisfies these factors—particularly the primary factor regarding state treasury liability—to claim the State's immunity.

### D. Individual-capacity claims are unaffected

Sovereign immunity does not apply to claims against officials in their individual capacities. See Hafer v. Melo, 502 U.S. 21, 31 (1991).

Defendants' reliance on Lewis v. Bd. of Educ. of Talbot Cnty. is misplaced and actually supports Plaintiff's position regarding individual liability. In Lewis, a former school board employee sued the Board and individual supervisors after being terminated. While the court found the Board itself immune, it expressly denied the motion to dismiss claims against the individual defendants in their individual capacities. Lewis, 262 F. Supp. 2d at 612, 615 (permitting First Amendment claim to proceed against individual supervisors).

Just as the Lewis court allowed claims against the individual supervisors to proceed despite the Board's immunity, this Court must allow Count VII (damages against Ak and Bedell) and Count IX (damages against CLF) to proceed. Defendants cannot use Lewis as a shield for the Board while ignoring its clear holding that individual officials remain liable for constitutional violations.

## VI. QUALIFIED IMMUNITY IS PREMATURE AND FACT-DEPENDENT

Defendants also invoke qualified immunity, asserting that it was not clearly established that the non-mandatory BYOD policy could be unlawful.

This request is premature and rests on disputed facts.

### 1. The qualified-immunity argument assumes Defendants' version of disputed facts

Defendants argue as if it is undisputed that:

1. the BYOD policy was voluntary;
2. CSPES was always ready to provide free school devices; and
3. no student, including A.E., was ever denied access or pressured to surrender a private device.

The Escobar Declaration #2 dispute each of these points. At the Rule 12(b)(6) stage, the Court must accept Plaintiff's factual allegations as true. At the Rule 56 stage, the Court must view the evidence in the light most favorable to Plaintiff. On either standard, Defendant-favored fact-finding on this record is not appropriate.

2. **The rights at issue were clearly established: Suspicionless searches of private property are unconstitutional**

Defendants attempt to frame the legal question broadly as "whether a non-mandatory BYOD policy is unlawful," arguing that this is a novel area of law. This mischaracterizes the constitutional violation. The specific conduct at issue is not the bringing of a device (BYOD), but the seizure, erasure, and persistent monitoring of that device ("configuration") without individualized suspicion.

By 2025, it was clearly established that:

- Student searches require reasonable suspicion: New Jersey v. T.L.O., 469 U.S. 325 (1985) established that a principal cannot search a student's personal effects without "reasonable grounds."
- Digital data requires heightened protection: Riley v. California, 573 U.S. 373 (2014) established that digital devices contain vastly more private information than physical containers, requiring heightened justification.

Defendants' own admission on August 20, 2025, confirms the violation Defendants' claim to qualified immunity is fatally undermined by their own justification for the policy. On this day, Plaintiff met personally with Defendants Ak and Camacho at CSPES to discuss his constitutional concerns. During this meeting, Defendant Ak attempted to justify the configuration regime by explicitly comparing it to the school's authority to search student "backpacks and lockers." (Escobar Decl. ¶ 11).

This admission defeats qualified immunity because it proves Defendants knew they were conducting a search but were "plainly incompetent" regarding the legal standard:

1. Lockers are school property; laptops are not. A student has a lower expectation of privacy in a school-owned locker than in a privately-owned personal computer.
2. Backpack searches require individualized suspicion. Under T.L.O., a principal cannot line up every student and search every backpack without cause. Yet, Defendants' policy imposed a blanket, suspicionless search and seizure on every student's device as a condition of entry.

By relying on a "backpack" analogy to justify mass digital surveillance, Defendants demonstrated a fundamental misunderstanding of clearly established Fourth Amendment law. No reasonable official in 2025 could believe that the limited power to search a specific backpack based on suspicion authorizes the mass wiping and monitoring of all student devices without suspicion.

## VII.   EVEN IF TREATED AS SUMMARY JUDGMENT, GENUINE DISPUTES OF MATERIAL FACT REQUIRE DENIAL

Under Rule 56, summary judgment is proper only if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.

Here, at least the following material facts are genuinely disputed:

1. Mandatory versus voluntary policy.
   - Defendants state the BYOD policy "never was mandatory" and always allowed free school devices.
   - Plaintiff's exhibits show a family letter stating that "all students will need to bring their own Chromebook" and that CSPES was "unable to provide school-issued devices."
2. Existence and extent of harm to A.E.
   - Defendants state A.E. was issued a Chromebook and never lacked access.
   - Plaintiff declares that she went nearly a month without a device, missed digital assignments, and was segregated to "alternate" work and a "restroom computer."
3. Effectiveness and permanence of the "loaner" exemption.

- Defendants treat the Device Usage Agreement as proof there is no injury.
- The document itself characterizes use as a revocable "privilege," requires return "upon request," and authorizes broad inspection of device contents.

4. Existence and implementation of the "updated" BYOD policy.

    - Defendants say the October 2025 policy renders the case moot.
    - Plaintiff states he has never received any notice of this policy and has found no public posting, beyond a single agenda entry.

5. Ongoing equal-protection disparity.

    - AACPS's MPIA response shows traditional AACPS students face no BYOD configuration or monitoring of private devices, while charter students do.
    - Defendants offer no contrary evidence.

These disputes go directly to standing, mootness, sovereign immunity (to the extent jurisdictional facts overlap with the merits), and qualified immunity. They cannot be resolved in Defendants' favor at this stage.

If the Court believes more information is needed to resolve jurisdictional issues, Plaintiff requests, under Rule 56(d), an opportunity to take limited discovery on:

- how the BYOD policy and its updates were drafted, approved, and communicated;
- how many families were told the school could not provide devices;
- records of students who lacked devices or were given alternate work; and
- the actual implementation of configuration and monitoring tools.

## VIII. CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff David Escobar, Jr. respectfully request that this Honorable Court:

1. Deny Defendants' Motion to Dismiss in full; and

2. To the extent the motion is treated as one for summary judgment, deny summary judgment on all challenged issues; and

3. In the alternative, grant relief under Rule 56(d) and allow targeted discovery before ruling on any summary-judgment questions; and

4. award any such further relief as the Court deems just;

Dated: December 4, 2025

Respectfully submitted,

*[signature]*

David Escobar Jr.
1628 Severn Run Ct.
Severn, MD 21144
240-429-2465