**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DAVID ESCOBAR JR.
    *Plaintiff,*

    v.

TABATHA CAMACHO, *et al.,*
    *Defendants*

No. 25-cv-2645-ABA

**MEMORANDUM OPINION**

During the COVID-19 pandemic, many schools provided students with school-issued laptops for remote learning. Some schools, including the Anne Arundel County Public Schools ("AACPS"), continued the practice post-pandemic. In 2024, one AACPS school, the Chesapeake Science Point Elementary School ("CSPES"), in which Plaintiff David Escobar Jr.'s daughter, A.E., is enrolled, adopted a Bring Your Own Device ("BYOD") Policy under which the default shifted from school-issued laptops to private laptops provided by parents that would be configured with the school's programs. The new policy was announced in 2025. Mr. Escobar, representing himself, has sued, alleging that the policy is unlawful. But A.E. has been provided a school-owned laptop free of charge, which Plaintiff does not dispute. Principally for that reason, Plaintiff lacks standing and his claims, in any event, are moot. The complaint will be dismissed and Plaintiff's motion for a temporary restraining order will be denied.

## I.      BACKGROUND

### A.      Plaintiff's allegations and claims[1]

Mr. Escobar is the parent of A.E., a minor child who is enrolled at CSPES. ECF No. 5 ¶ 1. Chesapeake Lighthouse Foundation ("CLF") is a nonprofit education management company that operates seven charter schools, including CSPES. *Id.* ¶ 11. CLF is governed by a board of directors that has policymaking authority for the schools within CLF's charter system. *Id.* ¶ 12.

On February 15, 2024, the CLF board of directors voted to adopt a BYOD policy, requiring parents to provide their children with a Chromebook for school and permit the school to install monitoring and control software. *Id.* ¶¶ 13, 19. The policy alternatively provided an "Optional Rental Program" for parents to rent a school-issued Chromebook for $100 per year although it stated that only "a limited number of devices are available." *Id.* ¶¶ 13, 45. Finally, the policy permitted waiver of the rental fee upon a showing of financial hardship. *Id.* ¶ 45. The minutes from the board meeting state that the purpose of the policy was to "mak[e] the principal's job easier by shifting the responsibility of acquiring devices from the school to parents." ECF No. 2-3 at 7.[2]

Following the board's approval, CLF directed its charter schools to implement the new policy beginning in the 2025–26 academic year. ECF No. 5 ¶ 19. In 2025, CSPES and CLF "publicly justified the BYOD policy on the grounds of an alleged budget

---

[1] At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

[2] Plaintiff's references in the Amended Complaint to Exhibits A–F are references to exhibits to the original complaint; the Court will consider them to have been incorporated into the Amended Complaint.

shortfall, citing both the expiration of [federal] Chromebook funding and a '12% loss in state funding' under the Blueprint for Maryland's Future law." *Id.* ¶ 14.[3] Mr. Escobar asserts that the 12% loss in state funding is inaccurate as the "Blueprint for Maryland's Future" law mandates an annual increase in funding from $8,310 per pupil in the 2022–23 academic year to $8,642 in the 2023–24 academic year and "rising to $12,365 by 2032–33." *Id.* ¶ 15.

CSPES instructed families to sign up for appointments so that the information technology staff could configure their devices with the school's software. *Id.* ¶ 40. Mr. Escobar asserts that "the mandatory configuration process requires: registration of the device to the school domain with ongoing administrative control; installation of Google's management platform for student emails, devices, and apps; deployment of GoGuardian monitoring software for content filtering and student activity monitoring; automatic and irreversible deletion of all local files on the device; installation of testing applications and school-based apps; [and] configuration for automatic connection to school Wi-Fi." *Id.* ¶ 41. CSPES prohibited all non-Chrome devices, thus "compel[ling] families to purchase a specific device even when they already own capable hardware." *Id.* ¶ 44. Mr. Escobar asserts that "[t]here is no option to decline participation [in the BYOD policy] while maintaining full educational access, as Defendants' own materials state that students must have configured Chromebooks 'during their entire enrollment here at our school,' making compliance a permanent condition of attendance" and making the only alternative a lack of access to digital learning resources. *Id.* ¶¶ 53–54.

---

[3] Plaintiff states that this occurred in February 2025 but cites to and attaches an email from June 2025. ECF No. 5 ¶ 14; ECF No. 2-4.

He also contends that no such BYOD policy has been applied to the AACPS system as a whole. *Id.* ¶¶ 27–28. Mr. Escobar contends that he "founded" a "civic journalism initiative" (the "Civic Ledger") and, on July 22, 2025, the Civic Ledger sent Principal Camacho and AACPS's legal counsel "a detailed letter outlining constitutional concerns with the BYOD policy." *Id.* ¶ 64. Despite this notice, CSPES sent a newsletter to parents on August 8, 2025 announcing that configuration appointments were open and, by August 15, 2025, nearly 100 appointments had been filled. *Id.* ¶ 65.

On August 11, 2025, Mr. Escobar filed this suit in both his individual capacity and as parent and next friend of A.E., and he also filed a motion for a temporary restraining order. ECF Nos. 2 & 3. On September 3, 2025, he filed an amended complaint asserting claims against Defendants Yilman Zayn Ak (the Chief Executive Officer of CLF), Tabatha Camacho (Principal of CSPES), Dr. Mark Bedell (Superintendent of AACPS), Board of Education of Anne Arundel County, CLF, and CLF board of directors. ECF No. 5. In the amended complaint, Mr. Escobar asserts eleven claims for relief under the Fourth and Fourteenth Amendments, Articles 24 and 26 of the Maryland Declaration of Rights, 42 U.S.C. § 1983, and Maryland Education Code § 7-308. *Id.* ¶¶ 67–162.

Mr. Escobar asserts in the amended complaint that he had standing to file this suit as a parent based on the fact that A.E. is a minor child enrolled at CSPES for the 2025–26 academic year and "must use a digital device to access curricular materials, classroom platforms, and essential communications." *Id.* ¶ 35. He further asserts that "[t]o comply with the BYOD policy, A.E. will use a personal laptop owned and maintained by her parent, Mr. David Escobar." *Id.* ¶ 37. This leads to Mr. Escobar's assertion that he has standing as an individual because the software would be installed onto his privately-owned device. *Id.* ¶¶ 37–38.

### B. Defendants' motion, and accompanying evidence

On November 5, 2025, Defendants filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). ECF No. 15. As noted above, when a defendant files a motion to dismiss a complaint based on a failure to state a claim, the court must accept as true all of the factual allegations contained in the complaint and generally may not consider information outside the complaint. *See* n.1, *supra*. But a motion to dismiss based on lack of subject matter jurisdiction is different in that "the plaintiff bears the burden of persuasion, and the court is free to consider exhibits outside the pleadings 'to resolve factual disputes concerning jurisdiction.'" *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002) (quoting *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)).

Defendants have submitted evidence that they contend establishes that Mr. Escobar lacks standing and/or that his claims are moot. This evidence includes a Declaration from Dr. Tabatha Camacho, who is the Principal of CSPES. ECF No. 15-2. Dr. Camacho explains that on September 4, 2025—a few weeks after Plaintiff filed this case (ECF No. 1) and the day after he filed his amended complaint (ECF No. 5)—CSPES provided A.E. with a free school-issued laptop to use for the 2025–26 academic year. ECF No. 15-2, Declaration of Dr. Tabatha Camacho ("Camacho Decl.") ¶¶ 3, 4. Thus, Defendants assert, "[a]t no point in time has CSPES or any of the Defendants required A.E. to use or configure a personal device." ECF No. 15-1 at 9 (citing Camacho Decl. ¶ 3). In addition, Defendants have filed a "Device Usage Agreement," signed by Mr. Escobar in September 2025, that states among other things that "All devices and accessories assigned to students are the property of CSP[ES] and on loan to the student." ECF No.

5

15-3 at 2.[4] Finally, Defendants have filed an updated BYOD policy, which was revised in October 2025 to clarify that although "[f]amilies are strongly encouraged to send a Chromebook for continuity between home and school; the school will provide a device for in-school use at no cost when needed." ECF No. 15-4 at 2. Defendants contend this was the policy all along—*i.e.*, that providing a privately-owned Chromebook was never mandatory—but in any event the October 2025 policy undisputedly confirmed that there was a no-cost rental option. *Id*. at 9 n.2.

For these reasons, Defendants argue, Plaintiff has failed to demonstrate that he suffered a cognizable injury in fact, that any alleged injury is redressable by the Court, or that his claim is not moot, "given that (1) A.E. is already using a school laptop free of charge and (2) the BYOD policy is not mandatory." *Id*. They contend that Mr. Escobar's complaint should be dismissed under Rule 12(b)(1) based on his lack of Article III standing, mootness, and sovereign immunity. *Id*. at 6–13. They contend that, if the complaint is not dismissed under Rule 12(b)(1), it should be dismissed under Rule 12(b)(6) on qualified immunity grounds. *Id*. at 13–15.

## II.    STANDARD OF REVIEW

A motion to dismiss based on lack of subject-matter jurisdiction raises questions of the Court's authority to adjudicate a case, and so the Court must first determine whether it has jurisdiction over the claims before ruling on the merits. Fed. R. Civ. P. 12(b)(1); *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31

---

[4] There is a dispute whether Mr. Escobar signed it on September 4 or 9, 2025; the handwriting is unclear. *See* ECF No. 22 at 5; ECF No. 23 at 6–7. That dispute is immaterial; either way, Mr. Escobar signed the agreement within the first two weeks of the school year. *See* ECF No. 22 at 5.

(2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998)); *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "[I]f the [defendant] challenges jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of persuasion, and the court is free to consider exhibits outside the pleadings 'to resolve factual disputes concerning jurisdiction.'" *Smith*, 290 F.3d at 205 (quoting *Williams*, 50 F.3d at 304). "Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333–34 (D. Md. 2019) (citing *CGM, LLC v. BellSouth Telecomm's, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011); *Akers v. Md. State Educ. Ass'n*, 376 F. Supp. 3d 563, 569 (D. Md. 2019)).

## III.   DISCUSSION

### A.   Standing

The Constitution limits "federal-court jurisdiction to actual cases or controversies." *Clapper v. Amensty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006); *Raines v. Byrd*, 521 U.S. 811, 818 (1997)) (internal quotations omitted). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Id.* (quoting *Raines*, 521 U.S. at 818). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Id.* at 409 (quoting *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 149 (2010)). Although "imminence" is a "somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury

7

is *certainly* impending." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992)) (internal quotations omitted).

In *John and Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, parents sued to challenge a school policy that permitted "school officials to develop gender support plans and then withhold information about a child's gender support plan from their parents." 78 F.4th 622, 626 (4th Cir. 2023). The Fourth Circuit held that the parents had not sufficiently alleged Article III standing as they had not alleged that any of their children had gender support plans or that their children had had any discussions with school officials about gender identity and therefore had not established a current injury. *Id.* at 629, 636. "The closest the parents c[a]me to asserting a current injury is opining that '[f]or all [they] know, some of their own children *could be* part of the 300' students with a gender support plan," which the court held was insufficient. *Id.* at 630 (emphasis in original). The Fourth Circuit further held that the parents had not alleged any impending injury as "they ha[d] not alleged that they suspect[ed] their children might be considering gender transition or have a heightened risk of doing so." *Id.*

Plaintiff argues that, when he received the June 2025 letter regarding the policy he "understood it as a mandate that every student must bring a privately-owned Chromebook and that the school could not supply one." ECF No. 22 at 4. He contends that the Defendants' position that "the policy was 'voluntary' misses the constitutional mark" because "the government cannot condition a public benefit (public education) on the waiver of a constitutional right (4th Amendment privacy of a personal device)." *Id.* He argues that "[e]ven if Defendants offered a loaner eventually, the initial demand . . . was an unconstitutional condition." *Id.* Mr. Escobar further argues that he has sufficiently pled injuries that are both past and ongoing because (1) "CSPES told families

in writing that all students must bring their own Chromebook and that the school was unable to provide school-issued devices"; (2) "Because Plaintiff refused to subject his private laptop to school control and surveillance, A.E. went nearly a month without a device, missed normal digital lessons, and was segregated to 'alternate' work and a 'restroom computer'" (though it is unclear what he means by "restroom computer"); and (3) "Plaintiff was placed in a forced choice: surrender a privately-owned device for configuration and monitoring, or accept ongoing educational disadvantage for his child." *Id.* at 8.

Mr. Escobar contends that *John and Jane Parents 1* is inapposite as he has alleged "that his child personally experienced loss of access and stigma because of CSPES's BYOD rollout." *Id.* (citing 78 F.4th at 630–31). Finally, he argues that these injuries are fairly traceable to Defendants' actions based on the implementation of the BYOD policy, "CSPES's inability or refusal to provide timely school devices," and "CLF's decision to require configuration and monitoring of private devices only for charter [school] students" and that the injuries are redressable by the Court by "an injunction preventing Defendants from conditioning access to public education on surrender of private devices or imposing unequal treatment on charter students" and monetary damages. *Id.* at 9.

The amended complaint, particularly in light of the evidence provided by Defendants, fails to establish a concrete and particularized injury to Mr. Escobar either individually or as parent to A.E. or that any injury is redressable by this Court. Under the June 2025 policy, parents had the option to either provide a privately-owned laptop for configuration with the school's system, request a rental from the school for $100 per year, or apply for a waiver of the rental fee to rent a school-issued laptop for free. ECF

No. 2-4 at 2. While the June 2025 policy indicates that there was a limited number of laptops available for rental and, therefore, they would not be able to provide laptops to *every* student, given that the policy does not specify *how* limited the supply is and Mr. Escobar contends that at least 100 configuration appointments had been made by August 15, 2025 (meaning that at least *some* parents opted to provide their child with a privately-owned laptop), Mr. Escobar has not shown how he and his child were "forced" to provide a privately-owned laptop for configuration and monitoring. *See id*. Mr. Escobar does not allege that he requested a rental or a waiver of the rental fee and was denied and, thus, had to provide a private-owned device either because they ran out of laptops or they did not find him to be eligible for a waiver. In fact, the record now reflects that A.E. was provided with a school-issued laptop for free within at least the first month of the school year. ECF No. 15-2, Camacho Decl. ¶ 3–4. Mr. Escobar asserts that under the terms of the device use agreement, use of the device is a revocable privilege rather than a "stable" right. ECF No. 22 at 6, 9–10. But this attenuated possibility that CSPES *may* revoke A.E.'s access to the device is insufficient to establish an *imminent* impending harm to assert standing. Therefore, Mr. Escobar lacks a concrete and particularized current or impending harm to him or his child as required for standing.

Mr. Escobar also has not shown how any alleged injury is redressable by this Court. To the extent the June 2025 policy was unclear, an October 2025 policy was issued that clarified that while Defendants preferred that parents provide their own Chromebook, "the school will provide a device for in-school use at no cost when needed." ECF No. 15-4 at 2. Further any alleged requirement to bring your own device has already been waived as to A.E. as she has been provided with a free school-issued

laptop. Therefore, any injunctive relief requested by Mr. Escobar would fail to redress any alleged harm as an injunction would not change the current circumstances of his child having received a school-issued laptop and he has not shown how any request for damages would redress his alleged injuries.

For these reasons, Defendants' motion to dismiss will be granted under Rule 12(b)(1) as Mr. Escobar lacks standing.

### B.    Mootness

Under Article III of the Constitution, the federal court can only decide on disputes where there is an actual "case or controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (citing *DaimlerChrysler*, 547 U.S. at 341). "[A]n 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Id.* at 90–91 (quoting *Alvarez v. Smith,* 558 U.S. 87, 92 (2009); *Arizonans for Off. Eng. v. Ariz.*, 520 U.S. 87, 92 (1997)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Id.* at 91 (quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982) (*per curiam*)). Although "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued," *id.* (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)), "voluntary compliance" still "moots a case" if the defendant "show[s] that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

Even if Mr. Escobar could establish standing as of the date the case was filed in August 2025 (which he has not, as explained above), any controversy is moot in light of

11

the October 2025 policy clarification. The June 2025 policy already provided parents with options other than providing their personal devices for their children's educational use. But to the extent Mr. Escobar alleges that he understood the policy to have been mandatory, the controversy no longer presents a live issue in light of the October 2025 policy clarifying that "the school will provide a device for in-school use at no cost when needed," ECF No. 15-4 at 2, and thus that families are not required to provide their own devices. To the extent Mr. Escobar argues that the revocability of the device use agreement does not make it "absolutely clear" that the challenged behavior will not recur, the undisputed evidence establishes that the two policies have consistently provided options for parents to opt out of providing their personal device, including by receiving a free school-issued rental. *Already, LLC*, 568 U.S. at 91; ECF No. 22 at 10; *see* ECF No. 2-4 (June 2025 policy); ECF No. 15-4 (October 2025 policy). The written policies expressly provide this option, and A.E. has been provided with a school-issued laptop. And there is no indication that A.E.'s laptop privileges will be revoked as a result of the dismissal of this case. Thus, Defendants have sufficiently shown that any wrongful conduct alleged to have occurred previously is not reasonably expected to recur. Therefore, even if Mr. Escobar had established standing, his claims are now moot.[5]

## IV.    CONCLUSION

For the aforementioned reasons, Defendants' motion to dismiss (ECF No. 15) will be granted. Therefore, Plaintiff's motion for temporary restraining order (ECF No. 3) will be denied as moot. A separate order follows.

---

[5] As the Court is dismissing the case on standing and mootness grounds, it need not consider Defendants' remaining arguments regarding sovereign and qualified immunity.

Date:  March 27, 2026

_____/s/_____
Adam B. Abelson
United States District Judge